WELLS v. STATE OF INDIANA.

[No. 29,702. Filed May 8, 1959.]

416

*Mellen & Mellen,* of Bedford, for appellant.

*Edwin K. Steers,* Attorney General, and *Merl M. Wall,* Assistant Attorney General, for appellee.

ACHOR, J.—Appellant was charged in two counts, one with involuntary manslaughter under §10-3504, Burns' 1956 Repl. [Acts 1929, ch. 189, §1, p. 616] and, two, with operating a motor vehicle while under the influence of intoxicating liquor under §47-2001(b), Burns' 1952 Repl. [Acts 1939, ch. 48, §52, p. 289.] He was tried by jury and found guilty on both counts.

The causes for appeal, which appellant has reserved and presented to this court, are as follows:

*One*: Refusal of the court to give appellant's tendered instruction numbered 1. This instruction was as follows:

> "A person charged with the commission of a crime is not required to testify against himself.
>
> "Before you can consider any evidence of a blood test in this cause you must first find that the defendant knowingly consented to the taking of a sample of his blood for a test of its alcoholic content, and if you do not so find then you should not consider such evidence of a blood test and the percentage result thereof as evidence against the defendant."

Appellant contends that this was a proper instruction because of the fact that by the taking of the blood test and reporting the results thereof in court he was (in effect) required to testify against himself, in violation of his constitutional right,[1] and that although he may have consented to such test while under the influence of intoxicating liquor, said consent did not constitute a waiver of his constitutional right, for the reason that it was not "freely and knowingly" given.[2] In support of his contention, appellant cites the case of *McClanahan* v. *State* (1953), 232 Ind. 567, 571, 112 N. E. 2d 575. In that case the court held that the mental condition of an intoxicated person is often such that he could not "freely and understandingly" enter a plea of guilty to a criminal charge and therefore the legislature could not, by statute,[3] ". . . require an accused who is in fact drunk or in an unlawful state

---

1. Art. 1, §14 Constitution of Indiana.
2. The parties do not argue the point as to whether the admissibility of a blood test, like the admissibility of a confession, is a question for the judge or the jury. See III Wigmore on Evidence, Testimonial Communications, Confessions, §861, p. 345.
3. §47-2307, Burns' 1952 Repl.

of intoxication, . . . to be brought before a magistrate" for arraignment.

A plea of guilty to a crime involves many considerations of law and fact, a decision regarding which requires a high degree of mental capacity on the part of the accused. There is a marked difference between the mental state required to enter a plea of guilty, as contrasted with mere consent to submit to a test to determine one's physical condition. The Law presumes (subject to proof to the contrary) that a consent to a physical examination or to make a confession is "freely and knowingly" given even though the person giving such consent is intoxicated.[4] Here the presumption stands unrebutted. One who voluntarily submits to a drunkometer test could not thereafter assert that he was thereby required to testify against himself. *Spitler* v. *State* (1943), 221 Ind. 107, 46 N. E. 2d 591. The instruction was outside the evidence. Therefore the court properly refused to give the instruction.

*Two*: Appellant contends that the court erred in giving Instruction 11. This instruction reads as follows:

"I instruct you that under the law of this state if you are convinced, beyond a reasonable doubt, that at the time and place charged in the affidavit

---

4. "A confession otherwise voluntary is not to be excluded because the accused was intoxicated when he made it. The fact that the confesser was intoxicated is a circumstance affecting its credibility, and is to be considered by the jury. . . . " 2 Wharton's Criminal Evidence, §388, p. 122.

"A confession made while *intoxicated* is governed by the general principle of testimonial capacity, and is therefore usually held admissible . . . " (Italics furnished.) Vol. III Wigmore on Evidence, §841(2), p. 282.

". . . It is only when accused is so drunk as to render him unconscious of what he is saying or producing a state of mania that the law will deem his confession incompetent. Intoxication of a lesser degree is for a jury to consider in determining the weight to give the confession. . . ." *Eiffe* v. *State* (1948), 226 Ind. 57, 63, 77 N. E. 2d 750, 8 I. L. E., Criminal Law, §182, p. 277.

herein, the defendant operated a motor vehicle upon the public highway of this state, and that at the time of such operation there was 15/100ths per cent or more by weight of alcohol in his blood, the fact, if it be a fact, that there was 15/100ths per cent by weight of alcohol in his blood, may be considered by you as evidence that the defendant was under the influence of intoxicating liquor sufficient to lessen his driving ability within the meaning of a statutory definition of this offense."

Appellant asserts in his objection that the instruction was erroneous for the following reasons: (1) That it was made applicable to both Counts 1 and 2 of the affidavits, whereas the issue of intoxication was not involved in Count 1 (but involuntary manslaughter only); (2) that neither the legislature nor the court had a right to indicate what percentage of alcoholic content in appellant's blood should be considered by the jury as making a prima facie case of driving while under the influence of intoxicating liquor, as charged in Count 2.

Contrary to appellant's first objection to Instruction 11, the state of appellant's condition while operating the automobile tended to show willful and wanton conduct and the doing of an unlawful act which resulted in the wrongful death, as charged in Count 1 of the affidavit. Therefore, the instruction was proper. *Minardo* v. *State* (1932), 204 Ind. 422, 430, 183 N. E. 548.

The subject matter of Instruction 11, to which the second objection is addressed, is specifically authorized within the express provisions of §47-2003 (2), Burns' 1952 Repl. [Acts 1939, ch. 48, §54, p. 289], as follows:

". . . Evidence that there was, at the time, fifteen hundredths [.15] per cent, or more, by weight of alcohol in his blood, is prima facie evi-

dence that the defendant was under the influence
of intoxicating liquor sufficiently to lessen his
driving ability within the meaning of the statutory
definitions of the offenses."

However, appellant cites *Steinbarger* v. *State* (1948),
226 Ind. 598, 82 N. E. 2d 519, as supporting his
proposition. In that case the defendant was charged
with the possession of burglary tools with intent to
commit burglary. The statute [§10-703, Burns' 1956
Repl.] referred to makes possession of burglary tools
by one previously convicted of a felony prima
facie evidence of intent to commit burglary. However,
the Steinbarger case and the case at bar are distin-
guishable. In the Steinbarger case the statute [§10-
703] purported to provide that certain proven facts
(mere possession of "burglary tools") constituted
prima facie evidence of another fact (*intent* to commit
burglary). This, we said, could not be. A man's state
of mind cannot be scientifically determined. Neither
can his *intent* to commit a burglary be presumed, as a
matter of law, from the mere possession of tools, for
which there are many other uses. By way of distinc-
tion, in the present case the instruction merely pro-
vided that .15 per cent of alcohol in the blood *may* be
considered as evidence that appellant was under the
influence of intoxicating liquor sufficient to lessen his
driving ability. In other words, the instruction merely
states that the jury may consider that, as a matter of
scientifically established cause and effect, such proven
amount of intoxication will ordinarily produce a calcu-
lable physical effect upon the intoxicant. Because of
this distinction, the Steinbarger case, *supra,* does not
sustain appellant.

Furthermore, in support of his objections, appellant
relies heavily upon earlier cases of this court which

state that, (a) the jury is the judge of both the law and the facts, and, (b) the court may not, by instruction, indicate the weight which shall be given to any evidence.[5] Appellant's contention regarding proposition (a) falls in the light of the recent case of *Beavers* v. *State* (1957), 236 Ind. 549, 559, 562, 141 N. E. 2d 118. In that case this court held that, nothwithstanding the constitutional provision,[6] herein relied upon by appellant, instructions to the jury regarding the law and the rules of evidence are both necessary and proper. In that case this court stated:

"A jury has no more right to ignore the law than it has to ignore the facts in a case. . . ."

. . .

". . . The right to determine the law, whether it be done by the court or jury, is not the right to make, repeal, disregard, or ignore the law in all its phases. *Keiser* v. *State* (1882), 83 Ind. 234; 1 Ewbanks Indiana Criminal Law, Symmes Ed., §416, p. 259."

The same logic is controlling of the decision in this case. If the jury is required to accept the law as established, it may also be required to accept the fact that, given a proven circumstance, a scientifically established effect may be considered to result therefrom.[7] We therefore conclude that the giving of the instruction was proper.

Further, appellant contends that the court committed error based upon the following circumstances: After both the appellee and appellant had concluded their

5. *Steinbarger* v. *State* (1948), 226 Ind. 598, 82 N. E. 2d 519.

6. "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Art. 1, §19, Constitution of Indiana.

7. Appellant does not question the reliability of the particular test or that the amount of alcohol fixed by §47-2003(2), Burns' 1952 Repl. would produce the stated effect. See *Spitler* v. *State* (1943), 221 Ind. 107, 46 N. E. 2d 591.

evidence and rested the case, the court permitted the state, over the objection of appellant, to recall appellant to the witness stand for further cross-examination. Appellant objected to the reopening of the case on the ground that appellee's request for reopening the case was for the purpose of further cross-examining a witness for the defendant (the opposition), and not "to offer evidence upon their original case," as authorized by statute. In support of his position appellant relies upon §9-1805, Burns' 1956 Repl., which reads in part as follows:

"The jury being impaneled and sworn, the trial shall proceed in the following order:

"First. The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it, and the defendant may then state his defense and briefly the evidence he expects to offer in support thereof.

"Second. The prosecuting attorney shall then offer the evidence in support of the prosecution and the defendant shall then offer the evidence in support of his defense.

"Third. The parties may then respectively offer rebutting evidence only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case."

The law is well settled in this state that the court may, within its discretion, reopen a case for further evidence which would have been a proper part of the case in chief.[8] *Hire* v. *State* (1896), 144 Ind. 359, 43 N. E. 312; *Kahlenbeck* v. *State* (1889), 119 Ind. 118, 21 N. E. 460.

---

8. "The trial court has discretion, even after all the evidence has been closed, to permit the state to introduce new testimony, even though it tends to change a witness' testimony in chief, and there will be no reversal except where it clearly appears that there was an abuse of discretion, so long as the defendant is allowed an opportunity to introduce rebutting evidence." 8 I. L. E.,

However, appellant vigorously asserts that under the statute [§9-1805, *supra*], the court is denied authority to reopen the case, except to permit ██ each party to offer evidence upon its own original case. This, appellant asserts, does not include the right to reopen the case for further cross-examination of a witness of the opposing party. It is true that the statute might be construed in the manner asserted by appellant. However, such a position requires a strained construction of the statute against the court. Against this construction, we recognize the fact that the trial judge is originally and inherently responsible for the orderly progress of the trial. Therefore, statutes which circumscribe the order of the procedure to be followed in the trial of a case must be liberally construed in favor of the trial judge. Under a liberal construction it can be said that, as distinguished from rebuttal there was only one "original case," and therefore the term "evidence upon *their* original case," as used in §9-1805, *supra,* may reasonably be construed to mean any evidence which would have been material and proper to the case in chief. We so construe the statute.[9] The cross-exami-

Criminal Law, §353, p. 413. *Ross* v. *The State* (1894), 9 Ind. App. 35, 36 N. E. 167. In this case, after final arguments were completed, the state was allowed to reopen its case to submit evidence as to the age of the defendant. See *Hansen* v. *State* (1952), 230 Ind. 635, 643, 106 N. E. 2d 226; *Stillson* v. *State* (1933), 204 Ind. 379, 387, 184 N. E. 260; *Hire* v. *State* (1896), 144 Ind. 359, 361, 43 N. E. 312; *Kahlenbeck* v. *State* (1889), 119 Ind. 118, 122, 21 N. E. 460.

9. "Generally, each side to a criminal prosecution has the right to introduce all of its case in chief without interruption, but the court may permit the state to reopen its case after it has rested, even while the defendant is introducing his evidence.

"The trial court has discretion, even after all the evidence has been closed, to permit the state to introduce new testimony, . . . . and there will be no reversal except where it clearly appears that there was an abuse of discretion, so long as the defendant is allowed an opportunity to introduce rebutting evidence." (Cases cited.) 8 I. L. E., ch. 20, §353, pp. 412, 413. Ewbanks Indiana Criminal Law, §339, p. 203.

nation of the defendant was part of the case in chief and therefore within provision of the statute. There is no showing that appellant was prejudiced in the presentation of his defense by reason of the action of the court.

Appellant further asserts that even though reopening the case may not have been reversible error in itself, it was error to permit the introduction of the particular testimony. We therefore look to the subject matter of the cross-examination of the defendant-witness to determine whether or not error was committed in the course of such examination. During the original cross-examination the witness was asked, "Are you the same Doyle E. Wells who was previously convicted of the offense of reckless driving in the Justice of Peace Court here in Paoli on February 12, 1950?" to which the witness answered, "No, I am not sure." On recall, the witness was questioned about several other convictions covering a period of three years preceding this particular case. The inquiry involved a conviction for reckless driving on January 27, 1950; a conviction for driving without a license on May 1, 1951; a conviction for driving without a license on April 26, 1951; a conviction for furnishing alcoholic beverages to minors on May 29, 1951; a conviction for driving while his license was suspended on August 26, 1951, and a conviction for speeding on July 26, 1953. In each instance the witness denied such conviction, whereupon the state introduced the record in each case in support of such convictions.

Appellant contends that the admission of the above evidence was in error for two reasons, first, that prior convictions were not a proper subject for interrogation, and, secondly, that upon denial of each conviction, the state was bound by the answer of the witness and

could not introduce further evidence to impeach the testimony of the witness.

The law with regard to the first of appellant's contentions has been clearly established to the contrary, as follows:

". . . In *Parker* v. *State* (1894), 136 Ind. 284, 288, 35 N. E. 1106, appears the following:

'The appellants, on the trial of the cause, testified in their own behalf, and the State, on cross-examination, over their objection, was permitted to ask them as to certain arrests and prosecutions against them occurring in the past, for the purpose of discrediting their testimony. . . . The testimony of an accused who testifies in his own behalf should be subject to the tests applied to the testimony of any other witnesses. It is not to be supposed that the testimony of a witness who is morally depraved, and an habitual law-breaker will, as a rule, be given the same credit as a witness who is of known moral character. In the case of *Bessette* v. *State*, 101 Ind. 85, it was said by this Court: "It is proper, within the bounds of propriety, to be controlled by the trial court, that the character and antecedents of a witness may be subject to a test on cross-examination, and that questions which go to exhibit his motives and interests as a witness, as well as those tending to show his character and antecedents, should be allowed." The extent to which such cross-examination shall be allowed is largely in the discretion of the trial court.' " [Cases cited.] *Stillson* v. *State* (1933), 204 Ind. 379, 384-385, 184 N. E. 260. Ewbanks Ind. Crim. L., §339, p. 203; 8 Wigmore, 3rd Ed., Privilege Against Self-Incrimination, §2277, p. 453; 3 Wigmore, 3rd Ed., Testimonial Impeachment, §§890, 891, pp. 380-382.

Appellant's second contention presents a more controversial issue. In support of this contention, appellant relies upon the cases of *Dunn* v. *State* (1904),

162 Ind. 174, 182-183, 70 N. E. 521, and *Rock* v. *State* (1915), 185 Ind. 51, 54, 110 N. E. 212.

In the *Dunn* case, *supra,* this court stated:

"It is equally well settled that the court may in its discretion permit a witness on cross-examination, including a defendant in a criminal case, to be interrogated as to specific, extraneous *offenses and conduct* calculated to degrade him, and thus impair his credibility as a witness. But in every such case the party propounding the inter-rogatory is bound by the answer the witness gives, and will not be permitted to introduce substantive evidence to contradict it. . . ." (Our italics.)

In the Dunn case the "offenses" referred to related to former *conduct* of the witness, not to a former *conviction.* Therefore, the above statement, as applied to the facts, was a proper statement of the law. The general rule upon this proposition has been stated as follows:

"Where a witness is asked on cross-examination as to a particular *fact* not material to the issue for the purpose of impeaching him, his answer concludes the party by whom such question is put, and cannot be contradicted by other evidence, except as to a *conviction of crime* which, if denied by the witness, may be proved by the record, supplemented, if necessary, by parol evidence as to the identity of the witness as the person whose conviction the record shows. . . ." (Our italics.) 98 C. J. S., §516, p. 442.

However, notwithstanding the general rule as stated above, appellant, with cause, cites and relies upon the case of *Rock* v. *State, supra,* (185 Ind. 51, 54), as establishing a contrary rule of law in Indiana. In that case the defendant took the stand in his own defense and, upon cross-examination, was asked regarding having previously paid a fine for operating a blind tiger. The defendant answered in

the negative. The court held that it was error to admit evidence of a prior conviction to contradict the negative answer. The court based its decision upon the Dunn case, *supra*, and other cases in which, however, the inquiry was directed to prior *acts* of the witness and not to former *convictions*. Significantly, too, the Rock case does not cite the earlier case of *Dotterer* v. *State* (1909), 172 Ind. 357, 366, 88 N. E. 689, in which the court stated the rule as follows: ". . . if there is a negative answer, the record of conviction is an effectual impeachment, and is admissible, if material. . . ." The *Rock* case, *supra*, ignores the well-established distinction between prior *conduct* and prior *convictions*.[10] Therefore, the Rock case is not grounded upon precedent, neither is it based upon reason. The general rule is that since other unlawful acts and convictions are collateral matters, they may not be considered as evidence of the character of the defendant as the accused. However, if the accused takes the stand in his own defense he automatically raises the issue of his credibility as a witness. Therefore, he may be interrogated on cross-examination regarding his unlawful conduct or convictions from which inferences may be drawn by the jury regarding his credibility as a witness.[11] The rule is well settled with regard to such interrogation that if such witness is asked about other unlawful *acts or conduct* and *denies* them, then the interrogator is not permitted to pursue the matter further by the introduction of conflicting testimony regarding the disputed fact collaterally injected into the case. *Dunn* v. *State, supra; Rock* v. *State, supra;*

---

10. "This is an astonishing decision, ignoring the distinction as to a conviction." 3 Wigmore, 3d Ed., Testimonial Impeachment, §987, p. 585, footnote 4.

11. 8 Wigmore, 3d Ed., Privilege Against Self-Incrimination, §2277, pp. 453-458.

*Stalcup* v. *The State* (1896), 146 Ind. 270, 45 N. E. 334. This rule is necessary in order that there by a definite end to interrogation regarding collateral matters. Otherwise, litigation might be extended *ad infinitum*.

However, the reason for the above limitation does not exist where the inquiry is related to *convictions*. As heretofore stated, when a defendant takes the ▆ witness stand in his own defense, his credibility as a witness, like that of any other witness, is a necessary and proper subject of interrogation. If, as a result of such interrogation, a circumstance develops from which the noncredibility of the witness can be ascertained expeditiously and with finality, as with the record of a conviction which has been denied by the witness, there is no good reason why the jury should not be informed as to the unreliability of the witness by the introduction of the record of such convictions. Therefore, the case of *Rock* v. *State, supra,* is reversed, in so far as it is in conflict with this opinion.

Judgment affirmed.

Landis, C. J. and Arterburn, J., concur.

Bobbitt, J., concurs in the result.

Jackson, J., concurs in the result.

NOTE.—Reported in 158 N. E. 2d 256.