**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**J. W. JOHNSON, Adolphus Foston and
Harry Johnson, Defendants-
Appellants.**

**Nos. 16869–16871.**

United States Court of Appeals,
Seventh Circuit.

May 6, 1970.

John J. Cleary, Chicago, Ill., for J. W. Johnson.

Stanley A. Bass, Chicago, Ill., for Foston.

Wendell P. Marbly, Thad B. Eubanks, Chicago, Ill., for Harry Johnson.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Richard A. Makarski, Asst. U. S. Attys., of counsel.

Before CASTLE, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KILEY, Circuit Judge.

This is a consolidated appeal brought by the three appellants, J. W. Johnson, Adolphus Foston and Harry Johnson, from their conviction, in a joint trial, for conspiring to commit a burglary at the Veterans Administration Hospital in Downey, Illinois, and also of the substantive offense of burglary.[1] We affirm.

Harry Johnson was employed at the hospital when on August 8, 1966, pursuant to a plan to take the safe from the credit union office of the hospital, Tolliver (who had informed the FBI in late July of the plan) drove to the hospital and was followed by a car carrying the Johnsons, Foston and Williams.[2] While defendant Geater[3] drove a truck to a dock in Building No. One, J. W. Johnson, Foston, Williams and Tolliver entered the credit union office. They were unable to open or move the safe, and hastily began to leave. FBI agents, alerted by Tolliver to the criminal plan, were at the scene and arrested the Johnsons and Foston.

The appellants initially contend that the United States was without authority to bring this action, because the alleged burglary did not take place within the exclusive or concurrent jurisdiction of the United States. The federal government holds a possessory interest (title) to the land upon which the Veterans Hospital is situated, but appellants argue that under 40 U.S.C. § 255, adopt-

ed in 1940, an officer of the Veterans Administration was required to give notice of acceptance of jurisdiction over the land in question and that notice was not given. We find no merit in this contention.

The land in question was taken for naval purposes by the federal government pursuant to a presidential proclamation issued in 1918. In 1924, the land was transferred to the Veterans Bureau, later known as the Veterans Administration. An Illinois statute, in effect in 1923, read as follows:

That exclusive jurisdiction in and over any land so acquired by the United States shall be, and the same is hereby, ceded to the United States, for all purposes except that the State retains the right to serve thereon all civil and criminal process issuing under authority of the state; but the jurisdiction ceded shall continue no longer than the said United States shall own such lands. Ill.Rev.Stat. ch. 143 § 30 (1923).

Concededly, at the time the land was acquired by the government, the federal government never accepted in writing this cession of jurisdiction. However, on the basis of the Supreme Court decision in Fort Leavenworth Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885), which recognized a presumptive acceptance of jurisdiction if the use of the land conferred a benefit upon the United States, we find the government did accept jurisdiction of the Downey, Illinois land. The federal government is benefited by the use of this land for its citizens who have been veterans of the Armed Services. No facts have been presented here that would rebut the presumption of acceptance of jurisdiction.

We read 40 U.S.C. § 255 as clearly requiring notice of acceptance of jurisdiction only on those cases where,

---

1. This was in violation of Ill.Rev.Stat. ch. 38, Sec. 19–1 (1965), and of 18 U.S.C. § 13.

2. Williams was originally indicted with the co-defendants, but failed to appear on date

of trial and was severed from the joint trial.

3. Defendant Geater was tried and convicted in the joint trial, but is not a party to this appeal.

prior to the passage of Section 255, jurisdiction had not yet been obtained. The presumption against the acceptance of jurisdiction in that statute is applicable only to land acquired subsequent to the 1940 amendment. See Markham v. United States, 215 F.2d 56, 58 (4th Cir. 1954).

We see no merit either in appellants' argument that even if jurisdiction is established, it ceased when the land, originally taken for naval purposes, was transferred to the Veterans Bureau. The transfer did not preclude the benefits to the government so as to jeopardize the continuance of jurisdiction.

Appellants Johnsons contend that the district court erred in failing to give to the jury the Love instruction.[4] This instruction would have embodied the appellants' theory of the case, i. e., that informant Tolliver, a government witness, had cooperated with FBI agents, and the agents were aware that a burglary was to be attempted. Thus, they claim, the entry onto the property was not made without authority as required under the Illinois Code definition of burglary.

■ We find the Love instruction inapplicable to the facts before us. The government did not induce or solicit the commission of the crime. No one invited the defendants onto the hospital premises. Witness Tolliver had been arrested by the government on July 19, 1966, for a different offense, and thereafter conferred with FBI officials about the planned burglary. He was simply used by the government to determine if and when the offense was to be committed.

■ Each of the appellants argues that incriminating statements were im-

properly admitted into evidence against them in violation of their rights established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant J. W. Johnson states that prior to his interrogation by FBI officials in Chicago he was given an inadequate *Miranda* warning as follows:

> That any statement he made might be used against him in a court of law, and that if he could not get an attorney, a judge would appoint him an attorney.

We find no reversible error in the use of the word "might" rather than "will" in the warning. See Craft v. United States, 403 F.2d 360, 364 (9th Cir. 1968); United States v. White, 417 F.2d 89, 91 (2d Cir. 1969). J. W. Johnson was adequately informed of his right to have an attorney, and that one would be appointed for him if he could not afford one.

■ Harry Johnson was told that a lawyer would be appointed "if and when you go to court" and claims this did not fully advise him of his right to have an attorney present during the custodial interrogation. However, he signed a statement which, read as a whole, complied with the *Miranda* requirements. Having signed the written waiver form, without evidence to the contrary, he cannot now contend that he did not understand his rights. See Bell v. United States, 382 F.2d 985, 987 (9th Cir. 1967), cert. denied, 390 U.S. 965, 88 S. Ct. 1070, 19 L.Ed.2d 1165 (1968).

■ Foston argues that he received no warning that he had a right to have a lawyer present during the questioning. In addition, he claims that he did not know what the term "incriminating statement" meant as given in the warn-

---

4. The submitted instruction, based on the decision in Love v. People, 160 Ill. 501, 43 N.E. 710 (1896), reads as follows:

> If the owner of the property in question, the United States, through a decoy consented to the entrance of the decoy and others onto the premises of the grounds of the United States Veterans Administration Hospital, Downey, Illinois, and specifically Building Number

> One thereon, when such entrance was part of a previously arranged plan between the decoy and federal agents representing the United States Veterans Administration, for the purpose of apprehending the defendant in the commission of the crime of burglary, then you are directed to return a finding of not guilty.

ings. The government claims that the warning given Foston before questioning did not refer to any particular time when he would be entitled to a lawyer. We hold that the *Miranda* requirements were substantially complied with as to Foston. In any case, the errors he urges were harmless in light of the overwhelming testimony against him, *see* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and the fact that the statement he gave was exculpatory.

■ Before trial, J. W. Johnson moved for a severance which was denied. He then argued that if he sought to call the other co-defendants as witnesses they could assert their privilege against self-incrimination, and their failure to testify would violate his right to confront witnesses against him. He claims that their testimony would explain his presence at the hospital at the time of the attempted robbery. We believe defendants were properly joined under Rule 8(b) of the Federal Rules of Criminal Procedure. There is no absolute requirement for a severance when a defendant suggests that the testimony of co-defendants is not available to him unless they are tried separately. As this court has stated, "The unsupported possibility that such testimony might be forthcoming does not make the denial of a motion for severance erroneous." United States v. Kahn, 381 F.2d 824, 841, cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967).

J. W. Johnson also claims that his motion for severance was improperly denied because the admission of the co-defendants' statements violated his rights under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* is inapplicable here, for none of the admitted co-defendants' statements implicated him. We also find without merit his third asserted reason for severance that the aggravated conduct of his co-defendants necessitated a separate trial.

■ There is no merit in the argument of the Johnsons that the introduction of the statement of Harry Johnson as to all the defendants was improper. The statement, given to the FBI after his arrest, was an alibi in which Johnson claimed that he was waiting at the Veterans Hospital, on the evening of August 8, 1966, to meet his girl friend who was a nurse's aide at Building One. It was introduced as a declaration of one co-conspirator against other conspirators. Appellants say that the statement was not made in furtherance of the conspiracy, but was given at the station after the conspiracy had ended. The statement was an alibi—an attempt to cover up conspiratorial conduct—and was, accordingly, made in furtherance of that conspiracy. The district court properly instructed the jury on the limited use of post-conspiracy statements.

The Johnsons claim that the district judge invaded the province of the jury when he stated that a prima facie case of conspiracy had been shown, and that the testimony of witnesses should apply to all defendants. The court's language did not exclude from the jury's consideration the determination of whether a conspiracy did, in fact, exist. See United States v. Allegretti, 340 F.2d 254, 256 (rehearing *en banc*), (7th Cir. 1964), cert. denied, 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965).

■ J. W. Johnson contends that Illinois law precludes the conviction of a person for both an "inchoate [conspiracy] and principal offense" and that he was improperly sentenced for two crimes. Ill.Rev.Stat. ch. 38, Sec. 8–5 (1965). However, the law of Illinois does not control here. The Assimilative Crimes Act, 18 U.S.C. § 13 provides for the use of state definition of particular crimes where no similar federal crime statute exists. Thus the Act provides for the adoption of the state definition of burglary to the facts at hand. Federal jurisdiction also establishes the separate crime of a conspiracy to commit a burglary (18 U.S.C. § 371) for which

defendant was also properly indicted and convicted. We hold the convictions for separate offenses under two separate statutes are valid. See Clark v. United States, 267 F.2d 99, 101–102 (4th Cir. 1959).

J. W. Johnson argues also that the government improperly cross-examined defense witness Lillie Murrell as to her relationship with him. She testified that she was Johnson's fiancee, and corroborated his testimony that he was looking for her car at the Veterans Hospital at the time of his arrest. On cross-examination, the government asked her whether she was aware that Johnson was married, and knew he had children. Over objection, both questions were answered affirmatively. The court thereafter instructed the jury to disregard the question and answer about the children. This caution was enough to preclude any unfairness to Johnson. In view of the witness' statement that she was Johnson's fiancee, we find the cross-examination as to his marital status was relevant to show the proper relationship between her and the defendant as affecting her credibility.

Finally, appellant Foston claims that FBI agent McQueen acted both as a government witness and as an assistant to the government attorney because he sat next to the attorney during trial. Foston argues that this dual position would confuse the jury as to the agent's real function. This contention is wholly lacking in merit. Johnston v. United States, 260 F.2d 345, 347 (10th Cir. 1958), cert. denied, 360 U.S. 935, 80 S. Ct. 1454, 4 L.Ed.2d 1547 (1959).

Having considered all the contentions of the appellants, we hold their convictions affirmed.

Defendants-appellants were represented in this court by Attorneys John J. Cleary, Stanley A. Bass and Wendell P. Marbly, of the Chicago Bar. The court expresses its appreciation for their dedicated services as court-appointed counsel.