ROUSE *v.* STATE OF INDIANA.

[No. 269S32.  Filed February 5, 1971.  Rehearing denied March 24, 1971.]

*G. Stanley Hood, Bruce R. Snyder,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—Defendant was indicted for the crime of murder in the first degree while attempting to perpetrate a robbery.  Defendant was tried by jury in the Kosciusko Circuit Court and was adjudged guilty of first degree murder.

Considering only the evidence most favorable to the State, we find that on May 12, 1967, at about 12.30 a.m., police officers found a man identified as Everett Bechtel lying on the floor of Pete and Beck's Tavern in Fort Wayne, Indiana.  His death was caused by a shotgun blast which resulted in massive hemorrhaging.

A witness who testified at the defendant's trial stated that at about 12:00 a.m., he entered Cap's Rib Bar, which is just across the street from Pete and Beck's Tavern. Looking out the window, he saw two subjects standing on the steps of Pete and Beck's Tavern. There was a noise like a pop-gun and the witness looked back towards the tavern where he saw a man come running out the front door. The witness identified the defendant as being one of the three men that he saw.

Janet Van Dyke testified that early on May 12, 1967, about 12:30 a.m., defendant came to her apartment along with Larry Henderson and Morris Jones. Jones was holding his hand, which was hurt. Her testimony was supported by the testimony of Roger Miller.

Additionally, defendant signed a warning and a waiver and then proceeded to make a statement regarding his participation in the crime.

Defendant first complains that he was never adequately warned of his constitutional rights, especially his right to have a lawyer present prior to any questioning, even if he could not afford one, and that this lack of adequate warning precluded him from making an intelligent waiver of his rights to the presence of an attorney. In the case before us, defendant was warned of his rights by Captain Chambers, who read the warning to defendant. Defendant appeared to read along with Chambers and in fact asked what the words "indigent" and "pauper" meant. After being advised, defendant signed the waiver and then tried to secure the services of a lawyer. Unable to do so, he stated, according to Captain Chambers: "I might as well tell you the whole story now without the aid of an attorney." *Miranda* does not require "that each police station must have a 'station house lawyer' present at all times to advise prisoners." *Miranda* v. *Arizona* (1966), 384 U. S. 436, 474, 86 S. Ct. 1602, 1628, 16 L. Ed. 2d 694, 724. Though a request for counsel has been made, an accused may, at a later time, waive his right to

counsel. In the case before us, the warning and waiver read to the defendant, and signed by him, consisted of the following:

## "YOUR RIGHTS

## "FORT WAYNE POLICE DEPARTMENT

Place: Station; Date: 5-18-67; Time: 1:45 P.M.

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer but one will be appointed for you, if and when you go to court and the court finds that you are a pauper. If you wish to answer questions now without a lawyer present, you have the right to stop answering at any time. You also have the right to stop answering questions until you talk to a lawyer.

## "WAIVER

"I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No pressure of any kind has been used against me.

SIGNED Johnny Rouse

Witness: Lt. J. Ellenwood; Witness: Sgt. Chambers; Time: 1:45 P.M."

In *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572 (a companion case involving the same crime) we held that an identical warning was adequate under the standards set out in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. Morris Jones participated in this attempted robbery with the defendant and another person. Accordingly, we again hold that this warning was adequate and that the defendant intelligently waived his constitutional rights.

Defendant next alleges that reversible error was committed

when the prosecution was able to admit a confession into evidence, over defendant's objections, before the corpus delicti of the crime charged was established by clear and independent evidence of probative value. This issue was also raised in *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572, 580, where we stated:

> "However, in first degree murder under our felony-murder statute we do not require that the exact felony or attempted felony be established by evidence independent of the confession nor do we require that premeditation be proved by outside independent evidence where the charge is purposeful and premeditated first degree murder. These elements may be shown by use of the confession in connection with any independent evidence in making out the case."

Corpus delicti is not synonymous with a prima facie case. Evidence independent of the confession indicates that the homicide was one of violence occurring under circumstances from which it could be drawn that it was criminal in nature. The cause of death was a shotgun blast and the victim was found on the floor of his tavern lying in a pool of blood. Shotgun pellets were found near the body, but there was no weapon near the body, thus negating the possibility of suicide. Therefore, the confession was properly admitted into evidence.

Defendant contends that it was prejudicial error for the court to allow Donald Molargik, a witness for the State of Indiana, to identify the defendant when asked to do so by the prosecuting attorney on redirect examination. In *Shipman* v. *State* (1962), 243 Ind. 245, 254, 183 N. E. 2d 823, 828, we stated:

> "The scope of re-direct examination is within the sound discretion of the trial court, and although he permits evidence to be introduced under such re-direct examination for the first time, this fact will not, under ordinary circumstances, constitute reversible error unless the opposite party is prevented from further interrogating the witness on the subject matter and of presenting other

evidence in contradiction of the testimony adduced if it is prejudicial to his position in the case. These circumstances do not appear in this case. *Brazil Block Coal Co.* v. *Gibson* (1903), 160 Ind. 319, 326, 66 N. E. 882, 885; *Wells* v. *State* (1959), 239 Ind. 415, 425, 426, 158 N. E. 2d 256, 260, 261-262."

In the case before us, the identity of the defendant was put in issue on direct examination when witness Donald Molargik testified that he could not identify the features of any of the subjects he saw. On cross-examination, counsel for the defendant tested Molargik's opportunity to perceive the subjects in considerable detail. Then, on re-direct examination, the prosecuting attorney cleared up defense counsel's intimations that Molargik had too short a time to view the subjects by simply asking him if he had ever seen the defendant before, and if so, when. It was at that point that the witness identified the defendant. Under these circumstances, we find that the trial court did not abuse its discretion in this matter.

Judgment is therefore affirmed.

Givan, Prentice and Hunter, JJ., concur; DeBruler, J., dissents with statement as follows:

"I dissent on the basis of my dissenting opinion in the companion case of *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572."

NOTE.—Reported in 266 N. E. 2d 209.