**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rubie C. JENKINS, Defendant-Appellant.**

**No. 18280.**

United States Court of Appeals,
Seventh Circuit.

March 25, 1971.

Thomas G. Hanlon, Tulsa, Okl., for defendant-appellant.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, FAIRCHILD, Circuit Judge, and GORDON, District Judge.

GORDON, District Judge.[1]

The appellant was convicted, after a jury trial, of aiding and abetting the uttering and passing of a counterfeit obligation of the United States, in violation of 18 U.S.C. § 472.

Two days after the appellant was arrested, he was interviewed by secret service agent John Sibert at the Evansville, Indiana police headquarters. At the outset of the interview, agent Sibert orally advised the appellant of his rights and tendered a waiver of rights form for the appellant's signature. The appellant refused to sign the form, however, and agent Sibert testified that the following then occurred:

Q But after that you asked him some questions?

A Yes, sir.

---

[1]. The writer of this opinion is sitting by designation from the district court for the Eastern District of Wisconsin.

Q  Did he answer you at any time, any questions?

A  In a very limited manner; the interview terminated within a few minutes.

\*  \*  \*  \*  \*  \*

Q  What was it, after reading these rights to the defendant and after showing them to him, did you ask of the defendant, Mr. Sibert?

A  One thing I asked him is if he would furnish me with personal data, that we like to obtain for record purposes of those persons who are arrested. Some of the other questions, one in particular I asked, if he knew George Elgin, and he says yes. And if I may refer to my notes—

Q  Yes.

A  This was on the 13th of November?  He said that he had known Elgin for—I put it in quotes—"several months."  Then he told me where he had lived in Oklahoma.  He also told me that he knew nothing about counterfeits.  He told me—and it was included in my report—*that he had traveled from Oklahoma with George Elgin.*  (Emphasis added).

The statements made by the appellant to agent Sibert directly contradicted statements made at Jenkins' trial by George Elgin, a co-defendant, to the effect that Elgin had been brought to Evansville from Oklahoma by a truck driver named Joe Madison.  For this reason, the appellant argues, it was error for the trial court to overrule his motion to strike the statements made to agent Sibert—statements which, he contends, were "important and prejudicial."

The facts in this case, which will be set out in this opinion, show that the government's case against the appellant was remarkably thin.  There was little evidence by which the government could link the appellant with the activities of George Elgin, and thus, the appellant's refusal to sign the waiver of rights form and his subsequent statements to agent Sibert cannot be denominated "harmless."

On November 11, 1968, a man later identified as the co-defendant George Elgin registered at an Evansville motel under the name of J. H. Westiby; he gave a license number and make of an automobile later identified as belonging to the appellant.  Elgin indicated that there were two persons in his party, but the assistant manager of the motel later testified that the other person remained in the car and that she "couldn't see what he looked like."

At about 5:30 P.M. on the same day, Elgin purchased $40.20 worth of clothing at an Evansville clothing store, giving a $100 bill in payment.  Neither the appellant nor his automobile was observed in the area of the clothing store.  At the close of the day's business, three $100 bills were held by the store, one of which was later shown to be counterfeit.

About an hour later, Elgin went to a drugstore and bought two bottles of liquor from the son of the owner of the store, again giving a $100 bill in payment.  However, the son immediately became suspicious about the bill's authenticity, and his father ran out to an adjoining parking lot in time to observe an automobile containing two persons pull away; he followed the car for a short distance, ascertaining only that the automobile bore an out-of-state license plate.  The father returned to the store and called the Evansville police.  The $100 bill later proved to be counterfeit.

At about 7:30 P.M., Elgin went to a liquor store and purchased $20.85 worth of additional liquor, again with a $100 bill.  Neither the appellant nor his automobile were observed by the store clerk.  The $100 bill was counterfeit.

As a result of a police radio bulletin prompted by the call by the owner of the drugstore, two patrolmen noticed a car matching the description broadcast leaving the motel at which Elgin had regis-

tered. The patrolmen stopped the car, questioned the appellant, who was alone in the car, and then had the appellant follow them to the drugstore where the automobile was identified as the one the owner had seen leaving his parking lot; the appellant, however, was not identified.

The patrolmen and the appellant then proceeded to the motel at which Elgin had registered and, after some further investigation, the appellant was formally placed under arrest. Elgin was later arrested after an identification by the drugstore owner and his son.

We are faced with the question of the significance of the appellant's express refusal to sign a waiver of his rights in relation to the continued interrogation that resulted in statements contrary to those made by a codefendant. This court, following Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), has made it clear that a heavy burden devolves upon the government to show that interrogation occurring after an accused declines to sign a waiver form resulted from a knowing and intelligent waiver, in some other form, of the accused's Miranda rights.

In United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968), a suspect, after being advised of his rights, declined to sign a waiver of rights form. However, he then refused an offer to call his attorney, saying, "it could wait until later on in the morning," and then told the FBI agents that they "could proceed with the questioning." This court held that government had not established a waiver, stating at page 853:

> There can be no question that when the defendant * * * refused to sign anything until he saw his attorney, he indicated a desire to remain "silent." Since the interrogation continued beyond that point, the Government had a "heavy burden" to show that the subsequent interrogation of the defendant took place after he

"knowingly and intelligently" waived his Miranda rights.

\* \* \* \* \* \*

[T]he defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion.

Recently, in United States v. Crisp, 435 F.2d 354 (7th Cir. 1970), this court again scrutinized the practice of continuing an interrogation after a suspect refuses to sign a waiver of rights form or otherwise indicates that he is invoking his right to remain silent. Recognizing that the "form supplies evidence of waiver, and a refusal to sign such a form may be a relevant factor in determining the validity of an asserted waiver in light of Miranda," Crisp goes on to point out that "Miranda does not, however, require such a written indication of waiver as the sole means of proving that fact." In Crisp, however, the accused's refusal to sign the waiver form was held not to be fatal to the government's case, for, after the refusal, Crisp clearly "persisted in his expressed desire to pass information to the Assistant United States Attorney even after having been informed of his rights and regardless of the absence of his attorney."

In the case at bar, unlike Crisp, the record is devoid of any evidence to show that Jenkins' answers to the agent's questions were in fact voluntary or followed an intelligent (although unwritten) waiver by Jenkins. See also United States v. Smith, 379 F.2d 628 (7th Cir. 1967); Moore v. United States, 401 F.2d

533 (9th Cir. 1968); *cf.* United States v. Thompson, 417 F.2d 196 (4th Cir. 1969); Hodge v. United States, 392 F. 2d 552 (5th Cir. 1968); Frazier v. United States, 136 U.S.App.D.C. 180, 419 F.2d 1161 (1969).

For the reasons stated above, the appellant's conviction must be reversed. Because of our conclusion, it will not be necessary to discuss the other allegations of error advanced by the appellant.

Reversed.