UNITED STATES of America ex rel.
Ruben WILLIAMS, Petitioner-
Appellant,

v.

John TWOMEY and Peter Bensinger,
Respondents-Appellees.

No. 71–1682.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1972.

Decided Aug. 18, 1972.

Rehearing Denied Nov. 9, 1972.

James B. Haddad, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., James B. Zagel, Robert E. Davison, Asst. Attys. Gen., Chicago, Ill., for appellees.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and DILLIN, District Judge.[*]

DILLIN, District Judge.

Ruben Williams appeals from a decision of the court below denying his petition for a writ of habeas corpus, brought pursuant to Title 28 U.S.C. § 2254. We reverse.

Appellant was convicted in the Circuit Court of Cook County, Illinois of the murder of Robert R. Fleming and sentenced to imprisonment for not less than thirty-five nor more than fifty years in the Illinois State Penitentiary. He appealed, primarily on the grounds that five statements, four oral and one written, were taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and erroneously admitted into evidence in violation of his constitutional rights under the Fifth and Sixth Amendments. The judgment was affirmed. People v. Williams, 264 N.E.2d 901 (Ill.App.1970), leave to appeal denied 45 Ill.2d 592 (1971).

His state remedies exhausted, appellant petitioned the district court for a writ of habeas corpus, submitting the petition for consideration upon the state court record. That court denied the petition, ruling that the record established that appellant had been adequately warned of his rights under *Miranda* and had voluntarily and knowingly waived them. We likewise rely upon the state court record.

I

The record reveals that Fleming was killed sometime during the early morning hours of October 15, 1967, in his Chicago apartment. Appellant was first arrested and taken into custody, also in the early morning hours of October 15, 1967, following an automobile accident he had on the Indiana Toll Road while driving Fleming's car. At the accident scene appellant presented Fleming's registration and credit cards to an Indiana State Trooper when asked for identification. The trooper took appellant to a police station to administer a Breatholizer test. Prior to the test the trooper read to appellant the legend printed on a standard form used by the Indiana State Police.[1]

---

[*] District Judge S. Hugh Dillin of the Southern District of Indiana is sitting by designation.

[1] The form reads: "Warning as to Rights
"Before we ask you any questions, it is our duty as police officers to advise you of your rights and to warn you of the consequences of waiving your rights.
"You have the absolute right to remain silent.

"Anything you say to us can be used against you in court.
"You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.
"You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We have no way of furnishing you with an attor-

Appellant then read the form and made an "X" on the signature line. Thereafter, under the trooper's questioning, he stated that he was Robert Fleming. He was charged with reckless driving, fined, and incarcerated in the Laporte County, Indiana jail for failure to pay the fine and costs, totaling $72.

On the evening of October 20, 1967, the same trooper learned that the automobile was connected to a Chicago homicide, and returned to the Laporte County Jail to question appellant. He read appellant the same warning and waiver of rights form, but this time appellant refused to sign or .mark it. Nevertheless, the trooper proceeded to interrogate appellant, eliciting from him that he was in fact Ruben Williams and that he had borrowed the accident vehicle from Robert Fleming. Under further questioning he admitted having met Fleming in a bar on the night of October 14, and later having had a homosexual relationship with him in a hotel room, ending with a disagreement between them. He then *refused to answer additional questions.*

Appellant challenges the adequacy of the advice of his right to an attorney, in light of the qualifying language, "We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court."

■ *Miranda* requires a clear and unequivocal warning to an accused of his constitutional rights, prior to the taking of any statement, whether exculpatory or inculpatory, during interrogation occurring after an accused is taken into custody. One of those rights is, of course, the right to the presence of counsel, hired or appointed, before and during any police questioning. Referring to the necessary warning of the right to appointed counsel at this crucial stage of the accusatory process, the Supreme Court said:

"The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." *Miranda,* 384 U.S. 436 at 473, 86 S.Ct. 1602 at 1627, 16 L. Ed.2d 694 at 723.

■ We hold that the warning given here was not an "effective and express explanation;" to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. In other words, the statement that no lawyer can be provided at the moment and can only be obtained if and when the accused reaches court substantially restricts the absolute right to counsel previously stated; it conveys the contradictory alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown, future time. The entire warning is therefore, at best, misleading and confusing and, at worst, constitutes a subtle temptation to the unsophisticated, indigent accused to forego the right to counsel at this critical moment.

ney, but one will be appointed for you, if you wish, if and when you go to court.

"If you decide to answer questions now without an attorney present, you will still have the right to stop answering at any time. You also have the right to stop answering any time until you talk to an attorney.

"Waiver

"I have read the above statement of my rights, and it has been read to me. I understand what my rights are. I wish to make a voluntary statement, and I do not want an attorney. No force, threats, or promises of any kind or nature have been used by anyone in any way to influence me to waive my rights. I am signing this statement after having been advised of my rights before any questions have been asked of me by the police."

The practice of police interrogation of an accused, after informing him that counsel cannot be provided at the present time, is a practice anticipated and expressly prohibited by the *Miranda* decision.

" . . . if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that the they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time." *Miranda*, 384 U.S. 436 at 474, 86 S.Ct. 1602 at 1628, 16 L.Ed.2d 694 at 724.

Consistent with the above, many courts encountering similarly qualified warnings have recognized them as deficient. See United States v. Garcia, 431 F.2d 134 (9 Cir. 1970); Lathers v. United States, 396 F.2d 524 (5 Cir. 1968); Sullins v. United States, 389 F.2d 985 (10 Cir. 1968); Fendley v. United States, 384 F.2d 923 (5 Cir. 1967); Square v. State, 283 Ala. 548, 219 So.2d 377 (1969); Reese v. State, 462 P.2d 331 (Okl.Cr.1969); State v. Creach, 77 Wash.2d 194, 461 P.2d 329 (Wash.1969).

■■ If an interrogation is conducted without an attorney present and a statement results, the government has a heavy burden of proving that the defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; Escobedo v. Illinois, 378 U.S. 478 (1964); United States v. Jenkins, 440 F.2d 574 (7 Cir. 1971); United States v. Nielsen, 392 F.2d 849 (7 Cir. 1968). In other words, the record must contain strong, affirmative evidence of a knowing and intelligent waiver. Waiver may not be presumed from a silent record, from the silence of the accused after warnings, or from the fact that an accused answers a few questions or gives some information, particularly when in-custody interrogation is involved. *Miranda, supra; Jenkins, supra; Nielsen, supra.*

■ The record here is totally barren of evidence of a knowing and intelligent waiver. There is no evidence to support an inference that the statements were spontaneous or volunteered. We accordingly hold that the October 15 and October 20 Indiana statements were inadmissible for lack of an adequate warning and for failure of proof of a knowing and intelligent waiver.

## II

In addition to the two Indiana statements, appellant gave two oral statements to Chicago police and a written statement to the assistant state's attorney for Cook County, Illinois.

As aforesaid, on October 20 the appellant gave Indiana authorities an oral statement which thoroughly implicated him in the death of Robert Fleming. This information was transmitted to the Chicago police who promptly took him into custody the next day (without benefit of extradition proceedings) and, armed with knowledge of his Indiana statement, continued his interrogation at a Chicago police station. This questioning resulted in two more oral statements, culminating in appellant's admission that he had struck Fleming with a lamp. An assistant state's attorney was then called, who proceeded to take a written statement.

Although there was a conflict in the testimony as to whether or not appellant was informed of his constitutional rights by the Chicago detectives, we assume that some warnings were given. It is by no means clear from the record, however, exactly what those warnings were. The record reflects four different versions—two by each detective. Only if all four versions were considered together, could we find that an adequate warning was given and this without regard to the fact that appellant had been erroneously informed of his rights just the

day before. However, it is certain that appellant was asked whether he wanted appointed counsel prior to making the written statement, and his response came loud and clear: "Yes, I want a lawyer . . . If it's possible that I can have one." The state's attorney then induced appellant to drop his request by the use of language remarkably similar to the condemned clause in the Indiana waiver of rights form.[2]

■ Regarding the failure to provide counsel, once appellant requested it, that omission is sufficient by itself to require suppression of the written statement. As noted above the authorities do not have the option of not providing a lawyer and continuing their interrogation. *Miranda* expressly states:

> "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." *Miranda*, 384 U.S. 436 at 474, 86 S.Ct. 1602 at 1628, 16 L.Ed.2d 694 at 723.

■ Finally, it is obvious that the three statements taken from appellant in Chicago are the direct and tainted fruits of the illegally obtained statement taken in Indiana the day before. Appellant was in the continuous custody of police from the moment of his arrest on October 15, 1967, through October 21, 1967. The lapse of only a few hours in the interrogation and the removal of appellant a few miles to the jurisdiction of another police authority certainly did not constitute a sufficient break in the stream of events to insulate the October 21 statements from the illegally obtained statement of the previous day. Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Wainwright v. LaSalle, 414 F.2d 1235 (5 Cir. 1969). Their admission was constitutional error.

### III

Appellant also requests this Court for a ruling that his testimony on trial, given after his five statements were received in evidence—illegally, as we have found—may not be used against him on a second trial of this cause in the state court. We hesitate to give what would amount to an advisory opinion, but deem it appropriate to observe that the holding of Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), would be as binding upon the state trial court as it would be upon this court with regard to use of such testimony as a part of the State's case in chief. As to use for impeachment purposes, Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), appears to state the present rule.

■ We are not unmindful of the fact that a warning identical to that here used by the Indiana trooper has been approved by a divided Supreme Court of Indiana in related cases of Jones v. State, 252 N.E.2d 572 (1969), and Rouse v. State, 266 N.E.2d 209 (1971). As above noted, it was likewise approved by the Appellate Court of Illinois in the appeal of the Illinois conviction here involved. People v. Williams, *supra*. Further, a warning including the phrase that a lawyer would be appointed for the defendant "if and when you go to court," has been given approval by this Court, although the opinion does not set out the entire warning.

2. ". . . Well, Ruben, I told you about a lawyer and I told you if you haven't got the money, the judge or someone of the officers will appoint a lawyer to defend you, but we are out here, we have no lawyer here. But your case will come up in court Monday, maybe and you can ask for a lawyer there and the judge will give you a lawyer. Now, you still want to make the statement without a lawyer being present here?"

United States v. Johnson, 426 F.2d 1112 (7 Cir. 1970).

In view of the foregoing, we have considered our holding in accordance with the criteria set forth in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967), and have determined that this decision should be given a prospective application. See United States v. Dickerson, 413 F.2d 1111 (7 Cir. 1969). Our holding, therefore, will apply only to interrogations taking place after the date of this decision.

We reverse the district court order denying the petition for the writ and remand with direction to grant the relief prayed for in the petition unless the Illinois authorities grant Williams a new trial within a reasonable period to be fixed by the district court.

PELL, Circuit Judge (dissenting).

While I agree with the majority that its decision should be only prospective, I must respectfully dissent from the holding of the opinion. We have before us a case in which there is little doubt that the defendant committed the homicide with which he was charged, a case in which the conviction was substantially based on his own admissions which were not extracted from him by physical duress and arguably not by psychological stress, but a case in which there is a real possibility that, lacking other independent proof, the defendant may be freed because of noncompliance with an overly technical application of the *Miranda* rule.

My principal point of disagreement with the majority opinion stems from the holding which finds the Indiana State Police warning of October 15, 1967, to be constitutionally deficient. There seems to be no claim that the

warning given would not have passed muster if it had not included the words, "[w]e have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court."

The majority opinion does not purport to overrule United States v. Johnson, 426 F.2d 1112 (7th Cir. 1970), cert. denied, 400 U.S. 842, 91 S.Ct. 86, 27 L.Ed. 2d 78, yet the issue seems to have been squarely before this court and Judge Kiley stated the following at 1115:

"Harry Johnson was told that a lawyer would be appointed 'if and when you go to court' and claims this did not fully advise him of his right to have an attorney present during the custodial interrogation. However, he signed a statement which, read as a whole, complied with the *Miranda* requirements. Having signed the written waiver form, without evidence to the contrary, he cannot now contend that he did not understand his rights. See Bell v. United States, 382 F.2d 985, 987 (9th Cir. 1967), cert. denied, 390 U.S. 965, 88 S.Ct. 1070, 19 L.Ed.2d 1165 (1968)."

While the *Johnson* case does not set out the entire warning given there, the fair inference seems to be that the remainder of the statement complies with the *Miranda* requirements. Likewise here, as pointed out above, there seems to be no faulting of the balance of the warning statement.

As pointed out in the majority opinion, the inclusion of the "not until court" language in an otherwise proper *Miranda* warning has been held not to be a fatal constitutional defect by the state courts of both Indiana and Illinois. Jones v. State, 252 N.E.2d 572 (Ind. 1969); Rouse v. State, 266 N.E.2d 209 (Ind.1971) [1]; and People v. Williams,

1. Two of the five judges of the Indiana Supreme Court dissented in *Jones;* however, upon the later consideration of the companion case of *Rouse,* one of the dissenting judges no longer being on the court, his successor concurred with the majority, leaving only one dissent.

264 N.E.2d 901 (Ill.App.1970). While we are not bound by the state court decision, I do not think we should ignore the realistic analysis of the very warning before us given by Judge Burman of the Illinois Appellate Court in *Williams, supra* at 904:

> "The warnings which were read to the defendant informed him (1) that he had a right to remain silent, (2) that anything he said could be used against him in court, (3) that he had a right to talk to a lawyer before and during questioning, (4) that he had a right to a lawyer's advice and presence even if he could not afford to hire one, (5) that a lawyer would be appointed for him, if and when he went to court, and (6) that he had a right to stop answering questions at any time until he talked to a lawyer. The defendant by signing the waiver acknowledged that he had read the warning and that he understood his rights. The above warnings when read in combination, clearly and understandably informed the defendant that he was entitled to appointed counsel prior to questioning."

It seems to me considering the *Miranda* statement here given as a whole that Williams was definitely informed that he did not have to talk without an attorney. He was informed that there were no facilities for getting him an attorney at the time in the jail but it seems nevertheless to me that it was made clear to him that he did not have to talk unless he voluntarily desired to do so. Certainly, the state police had and have no facilities for appointing attorneys and the impact of the majority decision virtually is that the police have to bring in an attorney before they can ever interrogate, irrespective of the warning. Whether this language is in the standard *Miranda* warnings which have been approved or not, it is implicitly there because there is no way of which I am aware by which the police in the initial interrogation of a suspect are able to provide him with counsel at that point. They do have to advise him, however, of his right not to speak without counsel and it seems to me that was adequately done here.

I cannot agree with the correctness of the statement of Lathers v. United States, 396 F.2d 524, 535 (5th Cir. 1968), that the "*Miranda* warning must effectively convey to the accused that he is entitled to a government-furnished counsel here and now." If "here and now" means the police station, this is just not a realistic statement because police stations do not furnish government counsel. It seems to me that the most that can be said is that, as the *Lathers* court itself said, "[t]he words must asseverate with conviction that any accused can have a lawyer before speaking." With that I cannot disagree. However, if the accused, after being warned, states that he wants a lawyer, either now or later, then while no necessary obligation exists to provide him one "here and now," there is a *Miranda* impediment against further interrogation. If it is contended that the accused, notwithstanding a request for counsel at a time of unavailability of the same, did nevertheless proceed to talk or answer questions on a voluntary basis, there would be indeed a heavy burden upon the state to demonstrate voluntariness. I would not hold, however, that it was an impossible burden.

With regard to the October 15 warning, I find the words of then Chief Judge Murrah particularly applicable in Coyote v. United States, 380 F.2d 305, 308 (10th Cir. 1967), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484:

> "Surely Miranda is not a ritual of words to be recited by rote according to didactic niceties. What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is wheth-

er the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.

"It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel. When the issue is raised in an admissibility hearing, i. e. see McHenry v. United States, 10 Cir., 308 F.2d 700, it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning."

As the majority opinion points out, it is not clear from the record exactly what warnings were given after Williams reached Illinois. This is not deemed significant in the majority opinion because the Illinois transactions were found to be tainted by the fountainhead of the supposedly deficient Indiana *Miranda* warning.

Since I would not find the Indiana warning deficient constitutionally, I would not reverse with the option to the state to retry the case but would, because of the real questions this case presents as to voluntariness, reverse for the district court to hold a full hearing to determine whether the confessions were voluntary. This, of course, would include the objective determination of whether in the circumstances of the case the words used both in Indiana and Illinois were sufficient to convey the required warning. Per se, in my opinion, they were.

While I would decide the case on this point as indicated and while the questioned portion of the Indiana State Police warning does factually and truthfully state the situation as to counsel availability at the police station, nevertheless it does seem that law enforcement officials might be well advised to eliminate this potential source of challenge to the validity of interrogation-produced statements.