UNITED STATES of America ex rel. William WEATHERSBY, Petitioner,

v.

James A. CHRANS, Respondent.

No. 86 C 2677.

United States District Court, N.D. Illinois, E.D.

March 17, 1988.

William Weathersby, pro se.

Neil F. Hartigan, Atty. Gen., Arleen C. Anderson, Mark L. Rotert, Asst. Attys. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Petitioner William Weathersby ("Petitioner") seeks a writ of habeas corpus, 28 U.S.C. § 2254, on the grounds that his conviction by the State of Illinois ("the State") for murdering his girlfriend, Katherine Gilbert, was obtained in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. For the reasons set forth below, the petition will be denied.

## FACTS

The facts in this case are more fully set forth in the opinion of the Illinois Appellate Court, *People v. Weathersby*, 138 Ill.App. 3d 310, 93 Ill.Dec. 127, 485 N.E.2d 1337 (1985). Stated briefly, Petitioner was taken into custody by Officer Alan Smith at around 5:00 p.m. on October 30, 1981, when the officer, responding to a call, met Petitioner outside his apartment, entered the apartment with him, and discovered a trail of blood leading to Ms. Gilbert's body.

At the police station, Petitioner was placed in an interview room and questioned by Detectives Salvatore and Gray without being given his *Miranda* warnings. He explained that he had arrived home a little before 5:00 p.m., had found Ms. Gilbert dead on his bedroom floor, and had gone to a neighbor's apartment to call the police.

Petitioner was intoxicated at the time he made these statements and soon fell asleep in the interview room. At 11:00 p.m., the detectives returned to the interview room, and took from Petitioner his blood-spotted underwear, socks, and shoes.

The next day at around 6:00 p.m., Salvatore again questioned Petitioner, in the same interview room as the day before. This time, Petitioner was given *Miranda* warnings; he then gave the detective a description of the previous day's events similar to the one he had already provided.

At 10:00 p.m. that evening, the two detectives once again sought to question Petitioner. However, while Salvatore was reading Petitioner his rights, Petitioner suddenly, if ambiguously, asked for a lawyer. According to one of the detectives, Salvatore did not complete the *Miranda* warnings. Both detectives do agree, however, and Petitioner concedes, that the detectives then got up to leave the room.

As they were passing out of the room, Petitioner called to the detectives and told them that, if they would get him coffee and cigarettes, he would tell them the real story about the events leading up to Ms. Gilbert's death. They agreed.

In Petitioner's new story, he explained that he awoke at 8:00 a.m. on the morning of October 30 and discovered Ms. Gilbert's body lying in a pool of blood next to his bed. Frightened, he left the apartment and spent the day drinking. Then, around 5:00 p.m., he went back to his apartment build-

ing, pretended to have just discovered the body, and called the police.

After he finished his story, the detectives went to get an assistant state's attorney ("ASA") and a court reporter. When the questioning began again, Petitioner invoked his right to counsel, but this request was ignored by the ASA and the detectives.

The trial court suppressed the statements made to the detectives and the ASA on the grounds that they had failed to heed Petitioner's request for an attorney; however, the court allowed the State to introduce the statements made to the detectives during the 10:00 p.m. interrogation on the grounds that Petitioner had (temporarily) waived his right to counsel when he called out to the officers as they were leaving the interview room.

Petitioner did not, at any time, seek to suppress his statements on the basis that they were the fruits of an illegal arrest, nor did he reassert, in his post-trial motion for a new trial, his unsuccessful pre-trial argument that his statements at the 10:00 p.m. interrogation were obtained in violation of his Fifth Amendment rights. On September 21, 1983, Petitioner was convicted of murder.

Petitioner appealed his conviction on two grounds relevant to the instant petition for habeas relief: 1) that the use at trial of statements Petitioner made to the detectives at the 10:00 p.m. interrogation violated his Fifth amendment rights because he had not voluntarily, knowingly, and intelligently waived his rights and because his inculpatory statements were not voluntary; 2) that he was deprived of his Sixth Amendment right to the effective assistance of counsel by virtue of his lawyers' failure to move to suppress his statements on the grounds that they were the fruits of an illegal arrest, and by virtue of his lawyers' failure to include, in the motion for a new trial, the Fifth Amendment argument previously rejected by the trial court. The Illinois Appellate Court rejected Petitioner's arguments.

## DISCUSSION

In the instant petition, Petitioner argues that the Illinois court erred in rejecting his constitutional claims. Unfortunately for Petitioner, his arguments have not improved with age.

### Fifth Amendment Claim

Petitioner predicates his Fifth Amendment claim on two distinct but related grounds: First, he claims that his waiver of his right to counsel at the 10:00 p.m. interrogation was not voluntary, knowing and intelligent; second, he claims that his subsequent statements were not voluntarily made.

### 1. Knowing and Intelligent Waiver

■ The State trial and appellate courts held that Petitioner waived his right to counsel during the 10:00 p.m. interrogation by Detectives Gray and Salvatore when he called the two back into the room. Petitioner claims, however, that the waiver was not voluntary, knowing, and intelligent because the officers had not informed him of all of the *Miranda* warnings at that interrogation.

The State court ruled, and this court agrees, that it is unnecessary to resolve the question of whether the (alleged) partial reading of rights satisfied constitutional requirements. *See Richardson v. Duckworth*, 834 F.2d 1366 (7th Cir.1987) (formulation of a particular *Miranda* warning need only constitute a 'fully effective equivalent' ") (citations omitted). Assuming *arguendo* that the officers did not provide Petitioner with all of the *Miranda* warnings at the 10:00 p.m. interrogation, Petitioner's waiver was nonetheless voluntary, knowing, and intelligent: Detective Salvatore had informed Petitioner of all of his rights at an interrogation earlier in the day; Petitioner understood his rights at that time; and, Petitioner chose to call the detectives back into the interrogation room as they were leaving to obtain counsel for him. Particularly in light of the statutory presumption of correctness of the State courts' findings, *Bryan v. Warden*, 820 F.2d 217, 219 (7th Cir.1987) ("state court findings on whether a defendant voluntarily waived his or her rights are entitled to

the § 2254(d) presumption"); *Perri v. Department of Correction of Illinois,* 817 F.2d 448, 449–50 (7th Cir.1987) (question of knowing and intelligent waiver of rights is question of fact and thus is entitled to the § 2254(d) presumption of correctness), this court concludes that Petitioner voluntarily, knowingly, and intelligently waived his right to counsel at the 10:00 p.m. interrogation.

2. Voluntary Statements to Detectives

■ Unlike issues relating to the validity of a waiver, the question of whether a defendant has voluntarily given a statement to the police is a question of mixed fact and law and is thus not entitled to the § 2254(d) presumption of correctness. *Bryan v. Warden,* 820 F.2d 217, 219 (7th Cir.1987); *Perri v. Department of Correction of Illinois,* 817 F.2d at 449. *See also Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Thus, this court must make a *de novo* determination as to whether, notwithstanding the validity of the Petitioner's waiver of his right to counsel, his subsequent statements to the police were "voluntary." *See Bryan v. Warden,* 820 F.2d at 221. In this inquiry, Petitioner bears the burden of establishing that the statements were not made voluntarily. *Boles v. Foltz,* 816 F.2d 1132, 1136 (6th Cir.1987) ("In a federal habeas action, the burden of proving that the confession was involuntary rests with the petitioner."); *Martin v. Wainwright,* 770 F.2d 918, 925 (11th Cir.1985) ("Although at trial the prosecution must establish, by a preponderance of the evidence, that a challenged confession was voluntary, on collateral review the burden of proving involuntariness rests with the habeas corpus applicant.") (citations omitted), *modified, rehearing denied,* 771 F.2d 185 (1986), *cert. denied,* — U.S. ——, 107 S.Ct. 307, 93 L.Ed.2d 281 (1987). *See also United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008 (7th Cir.1987) ("In a collateral attack pursuant to 28 U.S.C. § 2254 on a state criminal conviction, the ultimate burden of establishing that the State proceeding that resulted in the conviction violated the constitution remains on the petitioner.").

■ Here, Petitioner provides no evidence to indicate that his decision to speak to the police during the 10:00 interrogation was not voluntary. Although it is true that defendant had been in the same room for nearly twenty-four hours at the time of the statements, there is no evidence in the record suggesting, nor does Petitioner claim, that he was deprived of sleep, food, or water during this time. *See Martin v. Wainwright,* 770 F.2d at 925. Furthermore, while Petitioner makes much of the fact that his shoes, socks, and underwear were taken from him, he does not contest that this action resulted from the fact that they were covered with blood.

The State's conduct following Petitioner's arrest may have created some discomfort for him, but it did not amount to "a sophisticated campaign to break down his will." *United States v. Thoma,* 726 F.2d 1191 (7th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Indeed, as Petitioner was undoubtedly aware, his circumstances would have been no better, and might well have been worse, had he instead been placed in the local jail. This court therefore agrees with the State courts that the State did not violate Petitioner's Fifth or Fourteenth Amendment rights during the 10:00 p.m. interrogation and that the introduction of his statements at trial was proper.

*Sixth Amendment Claim*

■ Petitioner's arguments regarding the adequacy of his legal representation are also without merit. Petitioner claims that the public defender who worked on his pretrial motions should have moved to suppress all of his post-arrest statements on the grounds that they were the fruits of an arrest that violated the Fourth Amendment. He also claims that the private counsel who took over the case just before trial should have included in the post-trial motions a reassertion of the Fifth Amendment arguments rejected by the trial court prior to trial. This court need not decide whether the lawyers' decisions not to make these motions ran afoul of the "performance" prong of the *Wood v. Strickland,*

**944**

466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), ineffective assistance of counsel test. For it is abundantly clear that Petitioner cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Shepard v. Lane*, 818 F.2d 615, 620 (7th Cir.1987), *quoting, Wood v. Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

**1. Fourth Amendment Claim**

 With respect to the Fourth Amendment claim, Petitioner's problems are twofold. First, Officer Smith had probable cause to take Petitioner into custody. When the officer encountered Petitioner at the door to his apartment, Petitioner was drunk and had blood on his socks and shoes. When Petitioner opened the door and allowed the officer to enter, the officer found a trail of blood leading through the house. When the officer followed the trail, he found a dead woman in Petitioner's bed. These facts provided the officer with probable cause to suspect Petitioner of a serious crime.

Moreover, even if the officer did not have probable cause to arrest Petitioner, Petitioner's statements would not, in all likelihood, have been ruled to be inadmissible fruits of the illegal arrest. Although the *Miranda* warnings and Petitioner's voluntary decision to talk to the detectives did not, by themselves, render the statements sufficiently attenuated from the (purportedly) illegal arrest, *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the clear absence of flagrancy in the arresting officer's determination that he had probable cause would weigh heavily in favor of the admissibility of the statements. *Id.* at 604, 95 S.Ct. at 2262.

Accordingly, this court concludes that Petitioner cannot show that the public defender's decision not to move for the suppression of the statements was prejudicial to him, and thus cannot establish a Sixth Amendment violation on account of this decision.

**2. Fifth Amendment claim**

Petitioner stands on even weaker ground with respect to his claim that his private counsel's failure to reassert the Fifth Amendment argument post-trial constituted ineffective legal assistance. The trial court, the State appellate court, and this court have now all concluded that suppression of the statements made at the 10:00 p.m. interrogation was not warranted. Obviously, then, the decision not to seek their suppression could not have prejudiced Petitioner's case.

**CONCLUSION**

Accordingly, Petitioner's motion for summary judgment on his petition for habeas relief is denied, and the petition for writ of habeas corpus is dismissed.