Solomon RICHARDSON,
Petitioner-Appellant,

v.

Jack R. DUCKWORTH, Warden, and
Indiana Attorney General,
Respondents-Appellees.

No. 86–1008.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1987.

Decided Dec. 4, 1987.

Donald V. Morano, Chicago, Ill., for petitioner-appellant.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The petitioner, Richardson, appeals from an order of the United States District Court for the Northern District of Indiana denying his petition for a writ of habeas corpus. We affirm.

I. Facts

Solomon Richardson, petitioner-appellant, was tried in an Indiana state court and on

September 30, 1976 was convicted of murder in the perpetration of a robbery and sentenced to life imprisonment. He appealed his conviction to the Indiana Supreme Court arguing, that his "confession [was] in violation of his *Miranda* rights, that [his] desire to remain silent and have an attorney present during questioning [was] involuntary because of inducements and because of [his] ingestion of alcohol and drugs." *Richardson v. State,* 268 Ind. 61, 373 N.E.2d 874, 875 (1978). The Indiana Supreme Court rejected Richardson's arguments,[1] *Id.,* and the petitioner seeks review of his conviction under 28 U.S.C. § 2254. The district court denied Richardson's petition for a writ of habeas corpus finding that Richardson knowingly and voluntarily waived his right to counsel prior to giving the challenged statement. The petitioner appeals from the denial of his petition for a writ of habeas corpus.

Richardson was arrested for an armed robbery[2] at approximately 6:30 a.m. on April 8, 1976; a Gary, Indiana police officer advised him of his rights, and he was conveyed to the Lake County Jail. Later that morning, Richardson was questioned by Detectives Carroll and Malizzo of the Lake County Sheriff's Department. At a pre-trial suppression hearing, Detective Carroll testified that, before questioning Richardson, at approximately 11:10 a.m., he advised the petitioner of his rights, reading the following warning from a *Miranda* card:

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any ques-

tions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before questioning if you wish. If you decide to answer questioning now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

Detective Malizzo who was present during the first part of Richardson's questioning testified that Richardson was asked after each sentence in the *Miranda* warning whether he understood his rights. He further testified that Richardson responded affirmatively to each of the questions asked, answering "yes" after each question. After advising the defendant of his *Miranda* rights, a detective in the presence of his partner inquired of the petitioner whether he wished to make a statement. Richardson replied he did, and in Detective Malizzo's words, the petitioner "started volunteering information as to what happened and who did what" in the robbery.

After confessing to his involvement in the robbery, Richardson asked Detective Carroll about an attorney and a conversation ensued. At the pre-trial suppression hearing Detective Carroll described the conversation as follows:[3]

[Det. Carroll]

A.: He [Richardson] asked about a lawyer and I says [sic] you'll get one appointed for you in court.

[Att. Camouche representing the defendant]

Q.: He asked about a lawyer? And you said one would be appointed in court?

---

1. After unsuccessfully appealing his conviction, Richardson filed a Petition for Post–Conviction Relief arguing that his trial attorney had rendered ineffective assistance of counsel. The Indiana Supreme Court subsequently affirmed the denial of post-conviction relief. *Richardson v. State,* 439 N.E.2d 610 (Ind.1982).

2. The victim of the armed robbery later died as a result of gunshot wounds inflicted during the robbery. On June 11, 1976, an Indiana grand jury indicted Richardson, Littlejohn Faulkner, and James D. Faulkner, Jr. for first degree murder and murder in the perpetration of a rob-

bery. As we noted Richardson was convicted only of murder in the perpetration of a robbery.

3. Detective Malizzo testified that he did not remember whether Richardson asked about an attorney. We note that Richardson testified that one of the detectives left the room to get coffee, thus we infer that Detective Malizzo was the detective who left the room and was not present during this brief conversation between Detective Carroll and Richardson concerning an attorney.

A.: Right. He didn't ask to have a lawyer present.

Q.: He asked about a lawyer though, didn't he?

A.: Yes, he did.

Q.: And you read him the rights saying you could provide him a lawyer and you did not provide him a lawyer when he asked about a lawyer?

A.: I read him his rights on the card.

Q.: And you feel that's your only duty. Is that your only duty, just to read him [sic] from some card?

A.: Well, I advised him of his rights as best as I could.

Q.: But when he asked about a lawyer, you told him one would be provided at arraignment?

A.: Yes, I believe I did.

Record of Proceedings in the Supreme Court of Indiana at 41–42.

\* \* \* \* \* \*

Q.: Did he ask you for a lawyer?

A.: Did he ask me for a lawyer?

Q.: Yes.

A.: No.

*Id.* at 40–41.

At approximately 11:20 a.m., following their conversation, Detective Carroll, with Detective Malizzo again present, asked Richardson if he would like to put his statement in writing; once again the petitioner responded in the affirmative. But before transcribing Richardson's statement, Detective Carroll again informed the petitioner of his rights, reading a waiver and statement form, which provided:

"(WAIVER AND STATEMENT)

[Lake County Police]

DATE [*April 8, 1976*] PLACE [*Detective Bureau*]

TIME STARTED [*11:20 AM*]

I, [*Solomon Richardson*], am [*20*] years old. My date of birth is [*9/23/55*]. I live at [*1985 Washington Gary, Indiana*]. The person to whom I give the following voluntary statement, [*Det. Carroll*] having identified and made himself known as a [*Detective*] of the

[*Lake County*] Police Department, DULY WARNED AND ADVISED ME, AND I KNOW:

1. Before making this statement, I was advised that I have the right to remain silent and that anything I might say, may or will be used against me in a court of law.

2. That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

3. That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversation.

4. That in the course of any conversation, I can refuse to answer any further questions, and remain silent, thereby terminating the conversation.

5. That if I cannot hire an attorney, one will be provided for me.

*WAIVER*

I have read the foregoing statement of my rights, and I am fully aware of the said rights. I do not desire the services of any attorney at this time, and before proceeding with the making of any statements, or during the course of any conversation with any police officer and hereby waive said right. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me to procure any statement or induce any conversation. That the statement that I am about to give is the truth, and that I give it of my own free will.

Date [*April 8, 1976*] Time [*11:25 A.M.*]

[*SOLOMON D. RICHARDSON*]

I have read each page of this statement and waiver, consisting of [*4*] pages, each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct.

This statement was completed [*1:15 P.M.*], on the [*8th*] day of [*April*] 19[*76*].

[*SOLOMON D. RICHARDSON*]

[ROGER CARROLL]

### CERTIFICATION

I hereby certify that the foregoing warning and waiver was explained, and read to me by the above signatory, and that he also read it, and has affixed his signature hereto in my presence, and that I will so testify in court.

[*SOLOMON D. RICHARDSON*]

[ROGER CARROLL]"

Detective Carroll's testimony established that Richardson, a student at Ivy Tech,[4] a local-vocational school, was then observed reading the waiver and statement form. Detective Carroll further testified that he specifically asked the petitioner if he understood the waiver form and Richardson responded, answering yes.[5]

At approximately 11:25 a.m. Detective Carroll began typing the statement as Richardson reiterated his confession, again fully admitting his involvement in the robbery, and the officer completed the task at 1:15 p.m. The petitioner then proceeded to read and sign each page of the four-page statement, acknowledging that the statement was given knowingly and voluntarily. At his trial the state introduced and the trial court received Richardson's confession in evidence.

The petitioner claims that Detective Carroll's recitation of the *Miranda* warnings confused him in that he was advised that counsel would not be appointed until arraignment contradicting the earlier warning read from the *Miranda* card, as well as the warning on the waiver form.[6] The petitioner asserts that "Detective Carroll failed to give the mandated clear and unequivocal warning that 'a lawyer will be provided for him *prior to any interrogation.*' [*Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966)]." App.Br. at 13. The petitioner argues that the state trial judge erred in receiving the statement into evidence. Richardson also claims that his waiver of counsel was involuntary because Detective Carroll and Detective Malizzo induced and coerced him to confess, hinting that his co-defendants, two brothers (Littlejohn Faulkner and James Faulkner), would collaborate to the detriment of Richardson's defense; and suggested that things "would go easier for me [Richardson] if I gave one" (a statement).

### II. Admissibility of Richardson's Confession

#### A. Adequacy of the *Miranda* Warnings.

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that before conducting a custodial interrogation law enforcement officers must administer warnings to the defendant sufficient to inform him of his privilege against self-incrimination. The four essential elements of the warning that is required to be given to a defendant in custody before questioning are: (1) the defendant must be told of his right to remain silent; (2) that anything

---

**4.** Richardson testified at the pre-trial suppression hearing that in addition to being enrolled at Ivy Tech, he was a "unit and a half" short of completing his senior year of high school.

**5.** The Supreme Court of Indiana noted that "the waiver form was subsequently signed by Richardson, although it is not clear when." *Richardson v. State*, 268 Ind. 61, 373 N.E.2d 874, 875 (1978). After reviewing the record we agree with the state court's finding. The record reveals that the waiver portion of the Waiver and Statement form was ultimately signed by the petitioner, but it is unclear whether he signed the waiver portion of the form at 11:25 a.m. after reading the waiver form or whether he signed the waiver portion of the form at 1:15 p.m. after he read the typewritten statement. In any event the record establishes unequivocally that Detective Carroll read the petitioner his rights from the waiver form and that Richardson, after reading the form, told Detective Carroll he understood his rights.

**6.** The *Miranda* card provided *inter alia:*
"If you cannot afford a lawyer, one will be appointed for you before questioning if you wish."
and the waiver form read as follows:
"That if I cannot hire an attorney, one will be provided for me."

he says may be used against him; (3) that he has the right to have counsel present before and during questioning; and (4) he is entitled to have counsel appointed if he cannot afford one. *Id.* at 479, 86 S.Ct. at 1630; *California v. Prysock*, 453 U.S. 355, 358, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981); *United States v. Espinosa–Orlando*, 704 F.2d 507, 514 (11th Cir.1983). The Court recently noted that the *Miranda* exclusionary rule

"may be triggered even in the absence of a Fifth Amendment violation. The Fifth Amendment prohibits use by the prosecution in its case in chief only of compelled testimony. Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently unwarned statements that are voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*. Thus, in the individual case, *Miranda's* preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm."

*Oregon v. Elstad*, 470 U.S. 298, 306–07, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985). Notwithstanding that a *Miranda* violation does not itself constitute coercion, the violation of *Miranda* creates an "irrebutable presumption" that the statement was compelled and thus "must be excluded from the prosecution's case [in chief]." *Id.* at 307, 105 S.Ct. at 1292. However, with respect to the formulation of the *Miranda* warning itself, the Supreme Court has not been so exacting, rather it has adopted a flexible analysis. Specifically, the Court stated that it "never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981). The Court also pointed out that "*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures," *Id.*, rather the formulation of a particular *Miranda* warning need only constitute "a fully effective equivalent" of the four essential warnings articulated in *Miranda*. *Id.* at 360, 101 S.Ct. at 2809. Foreshadowing the Supreme Court's

reasoning and holding in *Prysock*, the Tenth Circuit provided the appropriate standard to determine the sufficiency of a particular *Miranda* warning:

"Surely *Miranda* is not a ritual of words to be recited by rote according to didactic niceties. What *Miranda* does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all his rights."

*Coyote v. United States*, 380 F.2d 305, 308 (10th Cir.), *cert. denied*, 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967). This standard is no less appropriate today as the Supreme Court has never mandated that law enforcement officers use certain "magic words" to inform a defendant of his rights. Thus, we decide whether under the totality of circumstances the warnings administered to Richardson constituted a "fully effective equivalent" of the four essential warnings articulated in *Miranda*.

Our review of the record establishes that Richardson was initially apprised of his *Miranda* warnings at 6:30 a.m. on the date of the robbery and he does not dispute this fact. Later that same morning at 11:10 a.m., less than five hours after receiving his initial warnings and before he was questioned, Detective Carroll again advised the petitioner of his rights, reading sentence by sentence, from a *Miranda* card (See *supra* pp. 1367–1368). We point out that Richardson does not challenge the adequacy of this particular warning. Thus, the petitioner implicitly admits that he was properly advised of his rights on two separate occasions before he confessed. The record further establishes that Detective Carroll apprised the petitioner of his *Miranda* rights for the third time that morning, reading the warnings from a waiver form. Additionally the 20 year-old petition-

er, who is just one "unit and a half" shy of graduating from high school and also a student at a local vocational school, was observed reading the waiver form, the sufficiency of which the petitioner again does not contest. Thus, considering the clear *Miranda* warnings actually given Richardson, his age, and educational achievement it is our opinion that the petitioner received more than adequate *Miranda* warnings.

Nevertheless, the petitioner asserts that the warnings were constitutionally deficient as Richardson was told, in response to his question about an attorney,[7] that a lawyer would be appointed in court. Richardson argues that he was confused as a result of Detective Carroll's statement "contradicting" the other *Miranda* warnings in spite of the fact that he was clearly told on two occasions before confessing that he had the right to consult with an attorney *before he was questioned.* Richardson argues that this court's holding in *United States ex rel. Williams v. Twomey,* 467 F.2d 1248, 1250 (7th Cir.1972), requires we reverse Richardson's conviction because Richardson, like the defendant in *Twomey,* received contradictory warnings. In *Twomey,* law enforcement officers administered the following *Miranda* warning to the defendant, Williams:

"You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.

You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court."

*Id.* at 1249–50. The court held that the warning was misleading and "was not an 'effective and express explanation' " of the defendant's rights; thus, the court held that the defendant's confession was inadmissible. *Id.* at 1250–51.

7. Richardson testified at the suppression hearing that he specifically requested an attorney. At the hearing he stated that "I asked for a lawyer." Now on appeal, however, Richardson argues that the *Miranda* warnings were inade-

■ We disagree, *Twomey* does not support Richardson's argument, its facts are clearly distinguishable from those before us. Richardson, unlike Williams, was never advised that an attorney would be appointed "if and when you go to court." On the other hand, Richardson was clearly advised of his *Miranda* rights on at least two occasions before he confessed and does not challenge the sufficiency of these particular warnings. Further, before the confession was typed Richardson was once more advised in clear and unambiguous language of his right to an attorney before being questioned. The facts in this case are more appropriately compared to those in *De La Rosa v. Texas,* 743 F.2d 299 (5th Cir.1984), *cert. denied,* 470 U.S. 1065, 105 S.Ct. 1781, 84 L.Ed.2d 840 (1985). There the defendant, like Richardson was given sufficient *Miranda* warnings, and as here a detective, while explaining the *Miranda* rights to the defendant, stated that "it will take some time" before a lawyer would be appointed. *Id.* at 302. Because of the Detective's statement, the defendant argued that the *Miranda* warnings were constitutionally deficient. Rejecting the defendant's reasoning and relying on *Prysock,* the court stated:

"We cannot accept the position that would have us ignore the repeated full and accurate warnings to focus only on the remark that appointing an attorney would take some time. The cumulative effect of the repeated incantations of *Miranda* and explanations in simpler language was such that [the defendant] was fully informed of his constitutional rights."

*Id.* at 303.

We find the Fifth Circuit's reasoning persuasive and convincing as applied to the facts before us. Richardson, a 20 year-old vocational student, was fully apprised of his constitutional rights on two separate occasions before he confessed and was again fully advised of his rights before his confession was typed. We will not allow

quate and does not claim that the detectives continued the questioning after his request for an attorney in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

the petitioner to nit pick the record in an attempt to isolate and misinterpret Detective Carroll's responsive remark that an attorney would be appointed in court. Rather, after evaluating the *Miranda* warnings given Richardson in light of the totality of circumstances, we hold that he was fully apprised of his constitutional rights.

### B. Voluntariness of the Confession.

■ Richardson further claims that Detective Carroll promised to go easy on him if he confessed and alleges that Detective Carroll informed him that since the Faulkner brothers (Richardson's co-defendants) were being held together in the same cell, they were probably collaborating on a story regarding the robbery that would implicate Richardson, therefore Richardson had better protect himself and provide the officers with a statement. The petitioner asserts that his confession was induced and/or coerced, thus made involuntarily.

As we have noted "state court findings on whether a defendant voluntarily waived his or her rights are entitled to the § 2254(d) presumption" of correctness. *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217, 219 (7th Cir.1987). This is especially true, as in this case where the voluntariness issue focuses on the credibility of witnesses. *Id.* at 221. In this case the state courts found, not only that Richardson was sufficiently apprised of his rights, but also that his confession was voluntary. The Indiana Supreme Court specifically stated that "the confessions in issue ... were made voluntarily." *Richardson v. Indiana,* 268 Ind. 61, 373 N.E.2d 874, 876 (1978). Our review of the record establishes that these factual findings of the states highest court are "fairly supported by the record," thus we presume that the findings are correct.

The evidence overwhelmingly demonstrates that Richardson was not coerced or induced to waive his rights. We note that Richardson read and signed a waiver of rights form that expressly stated "no promises or threats have been made to me, and no pressure or coercion of any kind has been used against me to procure any statement or induce any conversation." Further, the record establishes that Detective Carroll emphatically denied telling Richardson that the Faulkner brothers were collaborating against him and likewise denied telling Richardson that he should give a statement to protect himself. Defective Carroll further testified that Richardson specifically asked "what could be done for him" and Detective Carroll responded that he had nothing to do with such decisions. Richardson's affirmative questioning indicates that he confessed hoping to benefit himself. We note that Detective Malizzo's testimony corroborated Detective Carroll's testimony that Richardson was neither induced nor coerced nor offered a deal nor was he told that the Faulkner brothers were conspiring against him. Further we find nothing in the record to the contrary other than Richardson's bald, unsupported, self-serving statement made without a scintilla of support. Thus, the trial court properly rejected Richardson's contention that he was coerced or induced to waive his rights and implicitly determined that Richardson's testimony was incredible. Here we re-emphasize that the Supreme Court has specifically warned that the reviewing court cannot "substitute its own judgment as to the credibility of witnesses" for that of the state courts. *Maggio v. Fulford,* 462 U.S. 111, 113, 103 S.Ct. 2261, 2262, 76 L.Ed.2d 794 (1983); *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

Thus, according the state court's findings of fact the presumption of correctness required under § 2254(d), and finding no evidence in the record inferring much less establishing that Richardson was coerced or induced to waive his rights, given the totality of the circumstances, we hold that the petitioner voluntarily confessed. Thus, we hold that Richardson's Fifth Amendment rights were not violated during or as a result of his interrogation at the Lake County Sheriff's Department.[8] We affirm.

---

**8.** Richardson also claimed that the trial court erred when it received in evidence the redacted

statement of a co-defendant (Littlejohn Faulkner), who did not take the stand, violating the Court's holding in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and asserted that "excluding the incriminating evidence against the petitioner found in his own statement *and* that of Littlejohn, there would be absolutely no evidence upon which the jury could find" him guilty. App.Br. 24–25 (emphasis added). Because we hold that Richardson's confession was properly admitted; providing overwhelming evidence of his guilt; we do not address whether it was error to admit his co-defendant's statement because even assuming that it was error it was harmless error.