UNITED STATES of America, Plaintiff–Appellee,,

v.

Carlos SANCHEZ, Defendant–Appellant.

No. 88–1706.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1988.

Decided Sept. 30, 1988.

Marc W. Martin, Chicago, Ill., for defendant-appellant.

Theodore T. Poulos, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

EASTERBROOK, Circuit Judge.

The only substantial question is whether advice that a suspect's lawyer will be appointed by a court complies with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Chicago police stopped Sanchez for driving a car at night without headlights. Sanchez did not have a driver's license. The police ordered him out of the car and saw a gun on the seat. On arresting Sanchez the police said, among other things, that "if he could not afford an attorney, the court would appoint him an attorney". Sanchez's uncle arrived to claim the car (which belonged to the uncle) as the police were taking Sanchez to the station. Sanchez twice told the police that if his uncle found out that he carried a gun, his uncle would kill him; Sanchez also twice told the police that he needed the gun for self-protection. These statements were used at trial to show that Sanchez knowingly possessed a gun. As Sanchez had been convicted of four prior violent felonies, his possession of a gun was unlawful under the Armed Career Criminal Act, 18 U.S.C. § 922(g); he received 15 years' imprisonment without possibility of parole, the minimum term allowed under 18 U.S.C. § 924(e).

Sanchez contends that the advice given to him should be treated like the advice: "We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court." In *United States ex rel. Williams v. Twomey*, 467 F.2d 1248 (7th Cir.1972), reaffirmed in *Eagan v. Duckworth*, 843 F.2d 1554 (7th Cir.1988), we concluded that such a statement may mislead a suspect into believing that interrogation will continue, despite the suspect's request for a lawyer, until the suspect is taken to court—which may never happen. We held in *Williams* and *Eagan* that ensuing statements must be excluded whether or not the suspect was actually confused. Strong dissents in each case maintained that suspects would not understand this advice as contradicting a simultaneously-delivered statement that if the defendant asked for a lawyer, questioning would cease—and that even if the statement potentially is confusing, the suspect should be required to show that he *was* misled. Other courts of appeals have treated similar warnings the way the dissenting judges of this court would have done. E.g., *United States v. Lacy*, 446 F.2d 511 (5th Cir.1971); *Massimo v. United States*, 463 F.2d 1171 (2d Cir. 1972); *Wright v. North Carolina*, 483 F.2d 405 (4th Cir.1973); cf. *United States v. Contreras*, 667 F.2d 976 (11th Cir.1982).

Statements such as the ones in *Williams* and *Eagan* are true. The police do not carry lawyers in the trunks of their squad cars; counsel do not buzz about the streets waiting for persons to be arrested. Whenever a suspect asks for a lawyer, the appointment will come some time later and will be made by a court—after the suspect demonstrates that he cannot pay for counsel. *Miranda* requires the police to inform the suspect of his right to counsel and to cease the questioning immediately if the suspect wants legal aid. The Supreme Court did not require the police to appoint counsel immediately whenever a suspect asks; indeed, they may comply fully with *Miranda* even if they never arrange for the provision of counsel. The police have only to desist from questioning. So to tell the suspect that the police have no way to appoint counsel, and that only a court will do so (and then only if the suspect demon-

* Hon. Robert A. Grant, of the Northern District of Indiana, sitting by designation.

strates inability to afford a lawyer), is to provide correct and potentially useful information. But it is also to provide potentially confusing information to a novice in the criminal justice system. The difficulty of striking a balance when correct information may mislead is reflected in the disagreement about warnings of the "if and when" variety.

It has also led this court to draw a line between the statement disapproved in *Williams* and *Eagan* and a statement that refers to the role of a court without implying that the defendant must appear in court to obtain a lawyer. *United States ex rel. Placek v. Illinois*, 546 F.2d 1298, 1300 (7th Cir.1976), concluded that advice that "if he could not afford one, an attorney would be appointed through the Court" complied with *Miranda*. See also *Richardson v. Duckworth*, 834 F.2d 1366, 1369–71 (7th Cir.1987) (similar). In each case we reasoned that the reference to the role of the court in appointing a lawyer did not imply that the suspect's request for counsel could not be fulfilled promptly. The advice given to Sanchez—"if he could not afford an attorney, the court would appoint him an attorney"—did not imply a long delay, so the district court concluded that it fell closer to *Richardson* and *Placek* than to *Williams* and *Eagan*.

Sanchez insists that this distinction is not simply thin but nonsensical. To refer to action by the court is to inform the defendant that there will be a delay of indefinite duration. Sanchez was arrested at night and knew, he says, that he would not be taken to court until morning. That meant he could not have a lawyer until morning. The prosecutor replies that the police could have applied to the court for a lawyer without taking Sanchez before a judge. Even if the appointment were made on the papers, however, there would be delay.

It would be folly to pretend that our cases establish a clear principle. The difference between the statements involved in *Williams* and *Eagan*, on the one hand, and those in *Richardson* and *Placek*, on the other, is one of degree. The warnings in *Williams* and *Eagan* told the suspect bluntly that the police could not supply a lawyer promptly, that counsel could be appointed only at an uncertain time in the future; the warnings in *Richardson* and *Placek* told the suspect who would appoint the lawyer and left it to the suspect to infer how long that would take. Some might logically prefer the more complete and candid statement, but this court has held that the candid statement is forbidden and the less-complete warning permissible.

Because the difference between these warnings is small, we return to the point of *Miranda*. Small variations are far less important than whether the differences threaten achievement of the purposes of the warnings. *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). The dispositive question must be whether the defendant waived his privilege against compulsory self-incrimination, the constitutional right the *Miranda* warnings are designed to protect. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986); *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1987). To put the question directly is to ensure a simple answer.

The arresting officer told Sanchez that he had a right to remain silent and to have counsel present during any interrogation. Sanchez, no stranger to the criminal justice system, concedes that he understood these entitlements. The police were not overbearing; it would be closer to the mark to say that they never engaged in custodial interrogation. Sanchez volunteered the remark that his uncle would kill him if he found out about the gun, and the other incriminating statements followed as the police inquired why Sanchez had a gun if this could provoke violence within the family. A vast gulf separates the tactics of the police in this case from anything that might be called "compulsion"—whether by strong-arm tactics or by trickery. So we may be confident that obtaining the statements did not deprive Sanchez of his fifth amendment privilege, without regard to the details of the officers' advice about the way in which counsel would be appointed. Since the *Miranda* warnings are not themselves required by the Constitution, but are

simply ways of bringing home to suspects the underlying rights, *Oregon v. Elstad*, 470 U.S. 298, 305–07, 105 S.Ct. 1285, 1290–92, 84 L.Ed.2d 222 (1985); *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974); *Sulie v. Duckworth*, 689 F.2d 128, 130 (7th Cir.1982), there is no basis for declining to use as evidence the statements Sanchez made.

 None of Sanchez's other arguments requires much discussion. He contends, for example, that the 15–year term of imprisonment is cruel and unusual punishment. No court has so much as hinted that 15 years in jail for possession of a deadly weapon by a person with multiple convictions for violent felonies (§ 924(e) requires three, and Sanchez had four) is impermissible. A court may sentence a repeat offender to life imprisonment, *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); cf. *United States v. Jackson*, 835 F.2d 1195 (7th Cir.1987). It is therefore not surprising that the only decision expressly dealing with the 15–year mandatory minimum under § 924(e) has sustained it. *United States v. Gilliard*, 847 F.2d 21 (1st Cir.1988). We agree. As we said in *Jones v. Thieret*, 846 F.2d 457, 459 (7th Cir.1988), there is a substantial argument (and one court of appeals has held) that the eighth amendment allows terms of years up to and including life for felonies—that the cruel and unusual punishments clause is concerned with types of punishment rather than with case-by-case assessments of sentences. Sanchez's sentence falls so far short of the questionable zone, however, that we need not explore this corner of constitutional theory.

 Sanchez asked the court to give an instruction defining possession of a gun as follows: "Possession means that a person knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession." This instruction is based on principles of Illinois law. The court declined to give this instruction—§ 922(g) is not an Illinois statute—and instead gave the definition of possession contained in this circuit's pattern instructions. This was the right thing to do. The Illinois instruction is circular (defining possession in terms of possession), omits reference to principles of constructive possession, and conflates control (the usual element of possession) and knowledge. The knowledge element of the federal crime was defined in a separate instruction. Keeping the instructions concerning control and knowledge separate assists lay jurors. Although the district court did not inform the jury how to deal with a case in which a person unexpectedly finds a weapon and does not have time to surrender it, none of the evidence suggested such a possibility, so it was unnecessary to cover the subject.

The remaining contentions either were not preserved in the district court or challenge that court's factual conclusions, none of which is clearly erroneous. Cf. *United States v. D'Antoni*, 856 F.2d 975, 979 (7th Cir.1988).

AFFIRMED.