**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles HAYES, Defendant–Appellant.**

No. 89–2021.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 1990.

Decided Dec. 10, 1990.

Thomas M. Durkin, Asst. U.S. Atty. and George Jackson, III, Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Charles K. Piet, Chicago, Ill. and Harvey Sussman, Sussman & Hertzberg, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., CUDAHY and MANION, Circuit Judges.

MANION, Circuit Judge.

A jury found Charles William Hayes guilty on four counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and four counts of making false statements in connection with the acquisition of a firearm with intent to deceive a licensed firearms dealer in violation of 18 U.S.C. § 922(a)(6). The district court sentenced Hayes to concurrent sentences of the mandatory minimum of fifteen years on the four possession counts and five years of probation on the false statement counts. Hayes appeals his conviction. We affirm.

### I.

On October 17, 1987, Charles William Hayes purchased a Titan, "Gold Titan" brand, .25 caliber pistol from Hildebrand Sporting Goods (HSG), a licensed gun dealer. On December 2, 1987, after the requisite waiting period, Hayes returned to the store to pick up the pistol. At that time, Scott Hildebrand, an employee of HSG had Hayes complete a Federal Bureau of Alcohol, Tobacco and Firearms (ATF) Form 4473. This form requires the purchaser to answer a number of questions including: "Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?" Hayes wrote, "No," and signed the form. Hildebrand then delivered the gun to Hayes.

On January 4, 1988, Hayes purchased a Remington brand, model 10, 12-gauge shotgun from HSG. On February 2, 1988, Hayes purchased a Remington brand, model 870, 12-gauge shotgun from HSG. On May 31, 1988, Hayes purchased a Bauer brand, .25 caliber pistol from HSG. On each occasion when Hayes returned to pick up the guns, Hayes either wrote the answer, "No," or responded "No," when asked by the employee completing the ATF form question about previous felony convictions. An employee then delivered the guns to Hayes.

Hayes, however, had been convicted of at least three felonies. A grand jury indicted Hayes on four counts of possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and four counts of making false statements in connection with the acquisition of a firearm with intent to deceive a licensed firearms dealer in violation of 18 U.S.C. § 922(a)(6). At trial, the government called two employees of HSG who testified that Hayes was a frequent customer of the store and about each of the four sales of the guns, including the handling of the ATF forms. Since none of the weapons were recovered the government was unable to present them as evidence. The parties stipulated that Hayes had previously been convicted of a felony and that the firearms had been manufactured outside Illinois and had traveled in interstate commerce. Hayes did not present a defense. A jury found Hayes guilty on all eight counts. At sentencing, the district court relied on Hayes' two 1954 convictions for armed robbery and a third 1970 conviction for aggravated battery. Because Hayes had been convicted of three violent felonies, the court, although troubled by the harshness of the result, sentenced Hayes to a concurrent mandatory minimum sentence of fifteen years on each of the possession

counts. The court sentenced Hayes to five years' probation on the false statement counts to run consecutive to the prison sentence. Hayes appeals, challenging both his conviction and sentence.

## II.

### A.

Hayes contends that the evidence was insufficient to establish beyond a reasonable doubt that he committed the offense of possession of a firearm by a felon. Specifically, Hayes argues that there was not sufficient evidence that the firearms were capable of expelling projectiles and that there was not sufficient evidence that he possessed the firearms.

When challenging a conviction on the basis of the sufficiency of the evidence, the defendant bears a heavy burden. The defendant must show that the evidence, taken in the light most favorable to the government, could not have persuaded any rational trier of fact of the defendant's guilt beyond a reasonable doubt. *See United States v. Buggs*, 904 F.2d 1070, 1074 (7th Cir.1990).

■■■ Hayes argues that since the items that were sold to him were not introduced into evidence, the government presented no evidence to establish that the items were "firearms"[1] for purposes of section 922(g)(1). The government did present evidence through the testimony of two employees of HSG that they sold the defendant two Remington shotguns, a Titan pistol, and a Bauer pistol. This testimony is sufficient to establish that the items were "firearms." *See id.* at 1075. "The statute does not require that the Government prove the gun was actually capable of firing. Rather, it is enough that the gun was 'designed to fire.'" *Id.* (quoting *United States v. Polk*, 808 F.2d 33, 34 (8th Cir. 1986)). The employees testified that they handled and sold guns regularly, and a rational jury could have concluded that

they were sufficiently knowledgeable about the guns sold in the store to identify the items that Hayes purchased as various brands, gauges, and calibers of shotguns and pistols, that is, to identify the items as "firearms," *see id.* at 1076; *United States v. Liles*, 432 F.2d 18, 19–20 (9th Cir.1970) (where gun was not produced, but manager of sporting goods store examined gun and identified it as common type of revolver, evidence was sufficient to prove that item was "firearm"); consequently, we will not disturb the jury's verdict.

■■ Hayes also argues that there was insufficient evidence to prove that he possessed the firearms. The firearms were never recovered from Hayes or from his home or business. At trial, Scott Hildebrand testified to the procedures HSG followed in selling guns. After showing the requisite firearm owner identification (FOI) card, a customer would select and pay for the firearm. The HSG employee would issue a receipt at this time. After the statutory waiting period, the customer would return to pick up the firearm. At that time, the employee would complete the ATF form and deliver the firearm to the customer. The employees' testimony indicates that they followed this procedure in selling the firearms to Hayes. Specifically, regarding the Remington brand, model 10, 12–gauge shotgun, Hildebrand testified:

Q. [L]et me just back up to Receipt 2, Form 2. There is the 10 gauge [sic] shotgun, the Remington. Did you, in fact, sell that weapon to Mr. Hayes?

A. I didn't. Tom Sabatello did.

Q. Okay.... But the [ATF] form was filled out on January 6, 1988, is that correct?

A. Yes.

Q. And is that when the person received the firearm?

A. That's when the person receives the gun, yes.

---

1. For purposes of 18 U.S.C. § 922(g)(1), "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3).

Q. Looking at Form No. 2, did you, in fact, deliver to Mr. Hayes the shotgun; the Model 10, 12 gauge?

A. Yes, I did.

Regarding the Remington brand, model 870, 12–gauge shotgun, Hildebrand testified:

Q. On February 9, 1988, did you, in fact, deliver that firearm to Mr. Hayes on that—on or about that date?

A. Yes, I did.

Regarding the Bauer pistol, Hildebrand testified:

Q. Can you tell us what that number 20 is; transaction date?

A. That's the date that he came in to pick up the gun.

Q. Is that the date that the statements were made in Section A [of the ATF form] by Mr. Hayes?

A. Yes.

Q. That's the same date that this—this 25 caliber Bauer pistol was delivered to Mr. Hayes by yourself?

A. Yes.

Scott King, another HSG employee, testified that he delivered the Titan pistol to Hayes:

Q. Now, the transaction that you just testified about regarding Form No. 1, there is a reference to a pistol, a Titan, is that correct?

A. Yes.

Q. After the [ATF] Form 4473 was completed by yourself and Mr. Hayes, was that weapon or firearm delivered?

A. He took the gun out at that point, yes.

Q. That was delivered by yourself to Mr. Hayes?

A. To Charles Hayes.

Hayes argues that this testimony "offer[s] little more than the fact that the weapons were delivered to Defendant without any suggestion that he in fact exercised any dominion or control over them such as to constitute possession." Hayes' argument misses the point. The employees' testimony that they delivered the firearms to Hayes is sufficient evidence to establish that Hayes had actual, physical possession of the firearms. *See United States v. Williams,* 910 F.2d 1574, 1577 (7th Cir.1990) (testimony from eyewitnesses who claimed to see defendant with firearm was sufficient to support jury's finding of possession even in light of defendant's contrary testimony). By taking delivery of the firearms, Hayes necessarily was in possession of them. Hayes' own sworn statement from his detention hearing and preliminary examination, which was read into evidence at trial, provides further evidence of actual possession:

Q. When you went to the Hildebrand Gun Store you did buy those weapons did you not?

A. In a round about way.

Q. The guns were in your possession were they not?

A. Yes.

When the employees delivered the guns to Hayes, the weapons were within his immediate possession and control. A rational trier of fact could have found that this act of dominion and control established possession beyond a reasonable doubt. *See United States v. Garrett,* 903 F.2d 1105, 1110–11 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990).

### B.

Hayes next argues that the mandatory minimum sentence of fifteen years' imprisonment constitutes cruel and unusual punishment in violation of the eighth amendment. At sentencing, the government established that Hayes had been convicted of at least three felonies. Two of the convictions were in 1954 for separate armed robberies that occurred within several hours of each other. The third conviction was in 1970 for aggravated battery of a police officer. When a defendant has three prior convictions for violent felonies, 18 U.S.C. § 924(e)(1) mandates that he must be sentenced to a minimum period of fifteen years of imprisonment without parole. Given the age of the armed robbery convictions, the district court felt that the fifteen-year mandatory sentence was harsh, but that it had no discretion to modify the sentence.

Hayes emphasizes the age of the convictions and contends that the sentence is unconstitutionally disproportionate. Hayes relies on *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), but the facts of Hayes' case make *Solem* distinguishable. Unlike in *Solem*, where defendant's earlier crimes were relatively minor, Hayes' prior offenses were violent crimes, and one involved a crime against a person. Hayes' present offenses are also more serious than the defendant's forgery of a $100.00 check which triggered South Dakota's recidivist statute in *Solem*. Furthermore, Hayes' sentence is for fifteen years of imprisonment, in contrast to the life sentence without parole that the defendant in *Solem* faced.

While recognizing the harshness of this provision, this court has on numerous occasions held that "[a] mandatory minimum sentence of fifteen years for a defendant with three prior felony convictions (and who has now been convicted of yet another felony) is not constitutionally disproportionate." *United States v. Dombrowski*, 877 F.2d 520, 526 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2592, 110 L.Ed.2d 272 (1990); *United States v. Sanchez*, 859 F.2d 483, 486 (7th Cir.1988), *cert. denied,* 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). Hayes does not attempt to distinguish *Dombrowski* or *Sanchez,* which are controlling.

### C.

■ Finally, Hayes argues that the evidence of his prior conviction for aggravated battery was insufficient to establish that the offense was a "violent felony" for purposes of invoking the enhancement penalty provision, 18 U.S.C. § 924(e)(1). A "violent felony" is defined as

any crime punishable by imprisonment for a term exceeding one year ... that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious

potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). There is little room to dispute that a conviction for aggravated battery, arising from Hayes' having kicked a police officer in the groin, involved the use of physical force against the person of another. *See People v. Hayes*, 15 Ill. App.3d 851, 853, 305 N.E.2d 283, 285 (1973). His conviction notwithstanding, Hayes still claims non-violence. We reject his argument. *See United States v. Schieman*, 894 F.2d 909, 913 (7th Cir.) (aggravated battery of police officer counted as violent crime for purposes of § 924(e)), *cert. denied,* — U.S. —, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990); *see also United States v. Morales*, 902 F.2d 604, 605 (7th Cir.1990) (dicta that aggravated battery is violent felony).

### III.

For the foregoing reasons, Hayes' conviction and sentence are

AFFIRMED.