# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-2165

CHARLES E. SWEENEY, JR.,

*Petitioner-Appellant,*

v.

STEVE CARTER, Attorney General of Indiana,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 00-72-C-B/S—**Sarah Evans Barker**, *Judge.*

———————

ARGUED MAY 15, 2003—DECIDED MARCH 15, 2004

———————

Before BAUER, COFFEY, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Laypersons sometimes do not realize that the federal government and the state governments are separate sovereigns for purposes of criminal prosecutions, and thus that prosecutors from both may pursue charges for conduct covered by both laws. Lawyers should know better. To his regret, Charles Sweeney made this mistake after his lawyer concluded a plea agreement with the U.S. Attorney's Office in conjunction with certain

charges stemming from the murder of Daniel Guthrie. The lawyer told Sweeney that this agreement, coupled with an alleged oral promise from the state prosecutor's office, protected him from any use the state might have made of these statements. The state of Indiana thought differently, and based on the information Sweeney gave to the federal authorities, it investigated, brought charges, and convicted him for Guthrie's murder. After exhausting his appeals at the state level, Sweeney sought habeas corpus relief on the ground that his attorneys' mistaken advice about the alleged use-immunity agreement amounted to constitutionally ineffective assistance under the *Fifth* Amendment to the U.S. Constitution (not the Sixth). Because no such right has been clearly established by the United States Supreme Court, we affirm the district court's dismissal of Sweeney's petition.

## I

Guthrie never made it home from a fishing trip he took with Sweeney on May 28, 1991. Authorities in Clark County, Indiana, began an investigation, with Sweeney as the prime suspect. But after more than a year, detectives had failed to turn up any concrete leads—or even a body or murder weapon. The investigation quickly revived, however, after Sweeney was arrested and indicted on federal charges for placing a pipe bomb underneath the car of the lead detective in the murder investigation. Sweeney's arrest for the pipe-bomb incident, combined with drug possession charges, placed him in federal custody.

On June 26, 1992, Sweeney entered into a plea agreement with the U.S. Attorney's Office on the charges relating to the pipe bomb. In return for a promised motion for a downward departure under U.S.S.G. § 5K1.1 and the dropping of several of the federal charges, Sweeney agreed

to plead guilty to planting the pipe bomb, to implicate the others who were involved in the incident, and to disclose both the whereabouts of Guthrie's body and any information relating to the cause of Guthrie's death. Prior to concluding this agreement, Sweeney's attorneys telephoned the Clark County prosecutor and asked if he would grant Sweeney use immunity for any statements he made to the federal authorities in connection with the plea agreement. What happened next is the subject of dispute. Defense counsel claims that the Clark County prosecutor orally promised to grant full use immunity, or at least suggested that he would file a murder charge only if the charge was supported by "other evidence." The prosecutor denies that any offer of use immunity was made.

What is clear, at least for our purposes, is that after this conversation, defense counsel advised Sweeney that a use-immunity agreement was "carved in stone" and that Sweeney should take the deal with federal prosecutors and make as complete a statement as he could. Four days later, during a June 30 meeting with federal prosecutors and other authorities, Sweeney revealed the location of Guthrie's body and told his version of events, as follows. He and Guthrie had indeed gone fishing on May 28. On the way home from the fishing trip, the two men agreed to swap some of Sweeney's marijuana plants for a saddle owned by Guthrie. Upon arriving at Sweeney's home, Sweeney sent Guthrie out into the woods with a shovel, two buckets, and a 9mm handgun to obtain the plants. Meanwhile, Sweeney headed into town to play bingo. When Guthrie's wife telephoned the next morning to inquire about the whereabouts of her husband, Sweeney went into the woods to search for Guthrie. He found Guthrie dead of a gunshot wound to the head. Not wanting to risk discovery of his marijuana operation, Sweeney buried Guthrie's body and disposed of his possessions.

With the benefit of this information, the police obtained and executed a search warrant and soon located Guthrie's body near Sweeney's property. Sweeney's knowledge of the location of the body was an important piece of evidence at Sweeney's subsequent trial for the murder of Guthrie. Apparently not believing the bingo story, a jury convicted Sweeney of murder. Sweeney was sentenced to 60 years' imprisonment, to be served at the conclusion of his 210-month federal sentence for the pipe bomb incident.

## II

Our review of Sweeney's habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which permits a federal court to issue a writ of habeas corpus only if the state court reached a decision on the merits of a claim, and that decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Brown v. Sternes*, 304 F.3d 677, 690 (7th Cir. 2002). Whether a state ruling runs afoul of § 2254(d)(1) is a legal determination that we review *de novo. Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

At the outset, we need to clarify exactly what Sweeney is presenting on appeal. The district court considered and rejected three arguments: (1) that the failure of the federal authorities to give Sweeney *Miranda* warnings before he made his June 30 proffer statement violated his Fifth Amendment right against compulsory self-incrimination with respect to the subsequent state murder charges (see *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); (2) that the statements he made to federal authorities in connection with the plea agreement were not voluntary within the meaning of the Due Process Clause because he was not ad-

equately forewarned, whether by federal agents or his own defense counsel, that his statements could be used as evidence against him by the state authorities; and (3) that his defense attorneys' mistaken advice concerning the alleged use-immunity agreement rendered Sweeney's counsel constitutionally ineffective under the Fifth Amendment. In his brief before this court, however, Sweeney presents only the question "[w]hether Sweeney's counsel provided ineffective assistance when erroneously advising him that he had 'use immunity' and that he should cooperate with the [federal] government and give a complete statement regarding the murder of Daniel Guthrie." Although other parts of Sweeney's brief touch upon the *Miranda* and due process claims, it is not clear whether he is trying to pursue those theories independently, or if he instead is mentioning them only in support of his ineffective assistance claim.

It would not help Sweeney even if we gave him the benefit of the doubt and treated all three issues as if they were before us, because we agree with the district court that neither the *Miranda* nor the due process claim has any merit. This is so notwithstanding several apparent missteps on the part of the courts that have already reviewed this. For instance, the Indiana Supreme Court and the district court agreed that defense counsel's advising of Sweeney of his rights prior to his making the June 30 statement to federal authorities—a fact established by substantial testimony at trial—served as a "fully effective equivalent" to the usual *Miranda* warnings. See *Miranda*, 384 U.S. at 476. No authority of which we are aware holds that a suspect's discussions with defense counsel can double for the usual warnings given by law enforcement officers; indeed, the contrary position—that whatever warnings are otherwise required by *Miranda* must be administered by the public authorities—is quite well-established. The "effective equivalent" language in *Miranda* has been limited

to situations in which police officers have botched or otherwise truncated the usual warnings. See, *e.g.*, *Duckworth v. Eagan*, 492 U.S. 195 (1989); *Richardson v. Duckworth*, 834 F.2d 1366, 1370-71 (7th Cir. 1987).

The record here shows unequivocally that Sweeney knowingly and voluntarily waived his *Miranda* rights. We evaluate that question in light of the totality of the circumstances. See *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002); *United States v. Smith*, 218 F.3d 777, 780 (7th Cir. 2000). In addition,"[a] waiver need not be express, but may be inferred from the defendant's understanding of his rights coupled with a course of conduct reflecting his desire to give up his right to remain silent and have the counsel of an attorney." *Jackson*, 300 F.3d at 748 (internal quotation marks omitted). At least three facts are relevant here: Sweeney was accompanied by defense counsel at both the June 26 and June 30 meetings; he discussed the concept of use immunity with his lawyer prior to those meetings; and he attended the June 30 meeting with federal authorities pursuant to the plea agreement and for the express purpose of making the statements he now seeks to challenge. These facts are sufficient to infer a knowing and voluntary waiver on Sweeney's part.

As for the due process claim, Sweeney has not alleged, much less proven, the coercive police activity or other governmental misconduct that is "a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); see also *United States v. Lawal*, 231 F.3d 1045, 1048 (7th Cir. 2000); *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997). The Indiana Supreme Court's judgment was entirely consistent with Supreme Court decisions on the question and could in no way be characterized as "contrary to" or an "unreasonable application" of that authority.

**III**

That leaves Sweeney's ineffective assistance claim. The State argues that Sweeney failed to exhaust and has otherwise procedurally defaulted the claim. We can reach the merits only by first satisfying ourselves that Sweeney gave the Indiana courts a "meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001); see also 28 U.S.C. § 2254(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). The State rests its default argument on the fact that Sweeney styled his ineffective assistance claim in the Indiana Supreme Court as a violation of the Sixth Amendment and then advanced the same claim (based on the same facts) in his habeas corpus petition under the banner of the Fifth Amendment. Of course, this substitution was important as a matter of law, since the Sixth Amendment right to counsel does not attach until the initiation of adversary judicial proceedings. See *Fellers v. United States*, 124 S.Ct. 1019, 1022 (2004); *United States v. Gouveia*, 467 U.S. 180, 187-88 (1984). The State argues that Sweeney's last-minute substitution of one amendment for the other in his habeas petition amounts to procedural default.

We disagree. Fair presentment requires a petitioner to put forward operative facts and controlling legal principles. Whether she has done so depends on several factors, including: "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001); see also *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992). The State avoids arguing the

finer points of any of these factors, but since no single point is dispositive, we think greater care is necessary. It is plain that Sweeney was attempting to raise a complaint about the effectiveness of the counsel he received, given his reliance on *Strickland v. Washington*, 466 U.S. 668 (1984),and his explicit invocation of the Sixth Amendment before the Indiana Supreme Court. In his references to the *Strickland* line of cases, Sweeney explicitly relied on a range of federal cases that engage in constitutional analysis of the right to effective assistance of counsel.

We have had many occasions to consider the issue of procedural default where a § 2254 petitioner presents new factual allegations or casts her legal theories in a significantly different light than that urged in state court. On the one hand, we have found that the fact that two different claims arise from a common set of facts is not enough to avoid default. *United States ex rel., Nance v. Fairman*, 707 F.2d 936, 941 (7th Cir. 1983); *Spurlark v. Wolff*, 699 F.2d 354, 356 (7th Cir. 1983); *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980); *Macon v. Lash*, 458 F.2d 942, 948 (7th Cir. 1972). On the other hand, "a mere variation in legal theory" does not automatically lead to a finding of failure to exhaust. *Fairman*, 707 F.2d at 940; see also *McCaughtry*, 264 F.3d at 738 (citing *Wilks*, 627 F.2d at 38). Thus, a petitioner may reformulate her claims so long as the substance of the claim remains the same. *McCaughtry*, 264 F.3d at 738 (citing *Picard v. Connor*, 404 U.S. 270, 277-78 (1971)).

Consistent with these principles, it is important that the various iterations of Sweeney's ineffective assistance claim focused throughout on defense counsel's advice regarding the alleged use-immunity agreement. As a result, this case is different from *Spreitzer v. Schomig*, 219 F.3d 639, 645 (7th Cir. 2000) and *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999), where we found that petitioners who

advanced ineffective assistance claims that focused alternately on sentencing and post-conviction counsel at different stages of review exhausted neither claim. This also distinguishes Sweeney's case from *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998), where we found procedural default because petitioner's ineffective assistance claim on § 2254 review centered on counsel's failure to call a particular witness whose absence had not been criticized as an instance of ineffective assistance before the state court. Here, Sweeney's underlying legal theory and the facts on which it is based have remained the same throughout his post-conviction odyssey. This fact serves to distinguish Sweeney's situation from cases involving more dramatic shifts in the underlying legal theory. See, *e.g.*, *Kurzawa v. Jordan*, 146 F.3d 435, 443 (7th Cir. 1998) (finding failure to exhaust where petitioner "raised two entirely new, separate due process arguments on collateral appeal"); *Fairman*, 707 F.2d at 940-41 (finding default where petitioner brought only state-law evidentiary claims in state court, and then sought to bring constitutional claims stemming from the same facts on habeas review).

The Indiana Supreme Court had squarely before it the question whether the *Strickland* rule relating to ineffective assistance of counsel should be extended to counsel's role in Sweeney's initial set of encounters with the police and prosecutors. This is enough to preclude a finding of procedural default. See *Wilson*, 243 F.3d at 327-28.

## IV

At this point, however, Sweeney runs headlong into the AEDPA standard of review. While he was fully entitled to ask the Indiana Supreme Court to apply a *Strickland*-like standard to his claim, that court was obliged to do so only if existing U.S. Supreme Court precedent clearly established such a rule. Here, it is clear that the Supreme Court

has not taken the step that Sweeney needs. Indeed, as far as we can tell, the Supreme Court has not mentioned effective assistance of counsel (in the *Strickland* sense) and the Fifth Amendment in the same breath, let alone set forth a clearly established right to that effect. To the contrary, the Court has been at pains in the Sixth Amendment context to note that the right to counsel attaches only at the initiation of adversary criminal proceedings, and not before. *Gouveia*, 467 U.S. at 188. From there, it is a short step to the conclusion that the Indiana Supreme Court's decision cannot be called "contrary to" or "an unreasonable application of" a decision of the United States Supreme Court. See *Young v. Walls*, 311 F.3d 846, 849 (7th Cir. 2002). Thus, Sweeney's citation of Supreme Court authority that relies on the Sixth Amendment, while enough to defeat the state's claim of procedural default, is not enough to prevail on the merits under the restrictive AEDPA standard.

It might be possible to read the Supreme Court's decision in *Hill v. Lockhart*, 474 U.S. 52 (1985), as signaling the Court's willingness to extend *Strickland* to novel contexts. (The state, much to its credit, considers this possibility in its brief, though nowhere is the case mentioned by Sweeney.) *Lockhart* applied the two-part *Strickland* standard to the Court's earlier holding in *McMann v. Richardson*, 397 U.S. 759, 771 (1970), that the voluntariness of a guilty plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases. *Lockhart*, 474 U.S. at 56-57. But even the extension of the *Strickland* standard in *Lockhart* will not carry the day for Sweeney. Extrapolation from Supreme Court authority is not enough to overcome the deference to state-court decision-making built into § 2254(d). *Lockhart* or no, the operative question is whether the Supreme Court itself has established the right in Sweeney's particular circumstances. It has not, and so we are left with the inescapable conclusion that the lack of Supreme Court authority sinks Sweeney's claim.

None of this should be read to condone the wholly inadequate performance of defense counsel in this case. Viewing the facts in nearly any light, that performance fell below an objective standard of reasonableness under any account of prevailing norms of professionalism and would easily meet both parts of the *Strickland* standard (assuming of course that it could be applied at this stage). Any lawyer worth her salt should have known that an extrajudicial agreement that has not received the imprimatur of the court is unenforceable under Indiana law, let alone "carved in stone." See Ind. Code § 35-37-3-3. One of Sweeney's lawyers, Michael McDaniel, actually testified at the § 2254 hearing that he inferred that there was a use-immunity agreement from the prosecutor's use of "buzz words of use immunity," but it is plain that neither he nor Sweeney's other lawyer, Edwin Sedwick, ever bothered to obtain a confirmed copy of any such agreement. Even accepting McDaniel's account of the exchange between the lawyers and Clark County prosecutors, the "agreement" that was concluded was not a watertight grant of immunity, or even a use-immunity agreement at all in any conventional sense. Use-immunity agreements are not typically contingent on a lack of further development of evidence in a case. Finally, we have no doubt that Sweeney's knowledge of the location of Guthrie's body loomed large in the minds of the jury, and so it seems clear that Sweeney could, under a more forgiving standard than AEDPA, establish prejudice.

# V

We AFFIRM the judgment of the district court dismissing Sweeney's petition for a writ of habeas corpus.

No. 02-2165

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***